[Crim. No. 456. First Appellate District.—May 13, 1914.]

THE PEOPLE, Respondent, v. HO KIM YOU, Appellant.

[Crim. No. 455. First Appellate District.—May 13, 1914.]

THE PEOPLE, Respondent, v. CHEW BOCK HUE, Appellant.

CRIMINAL LAW—HOMICIDE—EVIDENCE OF MOVEMENTS OF DEFENDANTS AND POSSESSION OF WEAPONS PRIOR TO CRIME.—In a prosecution for homicide evidence is admissible that two days prior to the commission of the crime the four defendants, jointly charged with the offense, were traveling on the same railway train in the direction of the scene of the homicide, and that two of them were then armed with revolvers, notwithstanding such circumstances incidentally show that the two defendants may at the same time have been violating the law against carrying concealed weapons.

ID.—CROSS-EXAMINATION OF WITNESS—OVERRULING PROPER QUESTION— CURE OF ERROR.—Where in such prosecution a witness has testified that he heard one of the defendants say to his codefendants "Start shooting" but did not hear the name of any person mentioned, it is error to sustain an objection to a question on cross-examination as to whether he had at any time before testified that he had heard one of the defendants say at the time of the homicide to one of

his codefendants to shoot a certain person, where the objection to the question is not based on the ground that the question involved an assumption of a fact not in evidence; but the error is cured by the subsequent reading in evidence of the former testimony of the witness given at the coroner's inquest.

ID.—UNRESPONSIVE ANSWER BY WITNESS—MOTION TO STRIKE OUT.—A motion to strike out certain answers of a witness on the ground that they are not responsive to the questions should be specifically directed to the unresponsive part of the answers; if the motion is directed to the answers in their entirety, it is properly denied.

ID.—LIMITATIONS ON CROSS-EXAMINATION—DISCRETION OF COURT.—After a witness has testified upon cross-examination with considerable detail concerning the defendant's dress and appearance upon a certain occasion, the court does not abuse its discretion in refusing to permit further cross-examination upon the same lines.

ID.—OBJECTION TO TESTIMONY—MOTION TO STRIKE OUT.—Where the testimony of a witness is either a mere opinion or else hearsay, a motion to strike out should be granted if the question was answered before counsel had an opportunity to object; but where counsel have an opportunity to object to a question before it is answered, objection comes too late after the answer is given.

ID.—CROSS-EXAMINATION AS TO TESTIMONY AT PRELIMINARY HEARING—HARMLESS ERROR.—Where it appears that the testimony of a witness at the preliminary examination is not inconsistent with his testimony at the trial, error in sustaining objection to a question on cross-examination, intended to develop such inconsistency, does not result in substantial injury.

ID.—SEPARATE TRIAL OF CODEFENDANTS—WHEN WAIVED.—Where some of the defendants jointly charged with homicide demand a separate trial, and two different juries are empaneled, but the trial of all the defendants goes on simultaneously before both juries up to a certain point when the jury sitting in the case of the codefendants' case is temporarily excused and the trial of the defendants who demanded a separate trial goes on separately, their counsel consenting in open court to such procedure, such defendants will not be heard on appeal to complain that their demand for a separate trial was denied, or that they were prejudiced by the procedure thus adopted.

ID.—AIDERS AND ABETTORS OF CRIME—SUFFICIENCY OF EVIDENCE.—The presence of two of the defendants at or near the entrance of the room in which the homicide occurred, was, in conjunction with the other facts of the case, legally sufficient to warrant the finding implied from the verdict that such defendants aided and abetted the commission of the homicide.

ID.—IMPROPER QUESTIONS ON CROSS-EXAMINATION—HARMLESS ERROR IN
OVERRULING.—Error in overruling objections to questions on cross-
examination to show that the defendants have on several occasions
been arrested for carrying concealed weapons and one of them has
been arrested for assault with intent to commit murder, is harmless
if the answers are in the negative.

ID.—ASKING IMPROPER QUESTIONS OF WITNESS—WHETHER PREJUDICIAL
ERROR.—The mere asking of improper questions by the district
attorney on cross-examination does not constitute prejudicial mis-
conduct, where the court of its own motion ultimately charges the
jury to be governed in its deliberations solely by the evidence which
has been given by the witnesses, and not to be influenced by any
matters outside of the evidence which may have been injected into
the case by counsel on either side.

ID.—ERROR IN EXAMINATION OF WITNESS—CURING BY SUBSEQUENT
PROPER PROOF.—In a prosecution of Chinamen jointly charged with
homicide error of the special prosecutor in suggesting to the jury,
through the medium of questions to witnesses, that some of the
defendants were men of lawless and desperate character, is with-
out substantial prejudice in the face of the fact, subsequently shown
by proper proof, that all of the defendants were not only the
associates of highbinders but were themselves highbinders.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—IMPROPER QUESTIONS TO
WITNESSES—PRESUMPTION AS TO INFLUENCE ON JURY.—There is no
presumption that misconduct of the district attorney will prevail
with a jury to thé detriment of a defendant in the face of an ad-
monitory charge to disregard the same; but, to the contrary, the
presumption is ordinarily that the jury will heed the charge of the
court.  In the present case the harm resulting from the mere asking
by the district attorney of the questions complained of was in some
instances minimized by the answers of the witnesses; and in the
remaining instances counterbalanced by competent testimony; and
upon the whole such harm was ultimately undone by the trial
court's admonition and charge to the jury to disregard the matters
irregularly suggested, and be guided in arriving at a verdict solely
by the evidence rightfully received.

ID.—APPEAL—ERROR NOT RESULTING IN MISCARRIAGE OF JUSTICE—
INTERPRETATION OF CONSTITUTION.—Although section 4½ of article
VI of the constitution makes it the duty of appellate courts to affirm
a judgment of conviction in a criminal case regardless of any error
as to any matter of pleading or procedure, where, upon a considera-
tion of the entire record, including the evidence, they are of the
opinion that the conviction has not resulted in a miscarriage of
justice, nevertheless it might be well for trial courts and prosecuting
officers generally to keep in mind, in conjunction with their oaths,

of office, the fact that such provisions of the constitution were not designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the constitution, or to overthrow all statutory rules of procedure and evidence in criminal cases.

ID.—RULES OF CRIMINAL PROCEDURE—FAILURE TO OBSERVE—REVERSAL ON APPEAL.—Trial courts and prosecuting officers, in the trial of criminal cases, should adhere closely to the settled lines of criminal procedure at every stage of the case, and thereby be assured that they are neither aiding nor contributing to a miscarriage of justice, which, in cases where the evidence is evenly balanced, or the guilt of the defendant appears to appellate courts to be doubtful, will surely be reversed.

APPEAL from a judgment of the Superior Court of Monterey County and from an order refusing a new trial. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Carroll Cook, R. Porter Ashe, Elliot M. Epstein, and Daugherty & Lacey, for Appellants.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LENNON, P. J.—The information in this case jointly charged the defendants, Ho Kim You and Chew Bock Hue, and two other Chinamen, On Git and Yee Yum, with the crime of murder. The defendants Ho Kim You and Chew Bock Hue were convicted of murder in the first degree. Life imprisonment was fixed by the jury as the penalty. The appeal is from the judgment and from an order denying a new trial.

The facts of the case, upon which the people relied for a conviction, briefly stated are these: On the night of April 27, 1912, at about 8 o'clock, five Chinese were engaged in a poker game at No. 20 Soledad Street, Salinas City, Monterey County. These five Chinese were Lee Lung Kai, Chin Taw, Lee Poi, Lee Hing, and Toi Kai. They were gathered about a high table, and while engaged in gambling the codefendants On Git and Yee Yum entered the room, drew pistols and began shooting. As the result of the shooting Lee Lung Kai, Chin Taw, and Lee Poi were killed. Immediately after the codefendants On Git and Yee Yum quitted the premises a fourth Chinaman was killed in the street, but by whom it does not appear. The

defendants Ho Kim You and Chew Bock Hue did not participate in the shooting, but were standing in or near the doorway of the building at the time the shooting commenced. The circumstances preceding and immediately attending the shooting were testified to by the survivors of the poker game, Lee Hing and Toi Kai, who positively identified On Git and Yee Yum as the persons who did the shooting. Toi Kai testified that the codefendant Yee Yum on entering the room said to On Git "Start shooting"; that thereupon On Git shot twice at Lee Lung Kai; that Yee Yum shot at Chin Taw; that On Git also shot at Chin Taw; that Yee Yum and On Git then turned their guns upon and began shooting at Lee Poi. The story as told by Toi Kai was corroborated in detail by the testimony of Lee Hing. In addition to the foregoing evidence a railroad brakeman named Andrews testified upon behalf of the people that on April 25, 1912, two days before the homicide, his train southbound left San Francisco at 8 o'clock P. M., and that after passing San Mateo he observed four Chinese passengers, whom he positively identified as the defendants On Git, Yee Yum, Ho Kim You, and Chew Bock Hue. The witness testified that On Git was in the rear end of the smoking car; that Yee Yum occupied a forward seat in the same car; that Chew Bock Hue and Ho Kim You were respectively in the front and rear seats of another car; that On Git and Chew Bock Hue were respectively armed with an automatic and an ordinary pistol, which they each carried on the left hip. The testimony of the witness Andrews was followed and supplemented by the testimony of the conductor of the train, who said in substance that on the same trip testified to by Andrews four Chinamen boarded the train at San Mateo with tickets for Castroville; that two of them were armed; that two of them were in the smoker and the other two in the ladies' car; that they all left the train at Castroville and proceeded to the south side of the depot to the rear of the train and in the vicinity of the freight sheds; that he could not identify any one of them; that the pistols which two of them carried were blackhandled; that one pistol was an automatic and the other an old style revolver. The prosecution also introduced in evidence four railroad tickets which had been issued at San Mateo on April 25, 1912, and which

the conductor witness testified he collected from the four Chinamen whom he observed upon the train on that date.

The other evidence offered in the case by the prosecution was to the effect that on the second day of May, 1912, five days after the homicide, these four defendants were arrested as they were about to depart in an automobile which had been brought from Santa Cruz by a Chinaman to Moss's Landing, about twelve miles from Salinas and three miles from Castroville. Incidentally the evidence upon the whole case shows that On Git, Yee Yum, Ho Kim You, and Chew Bock Hue were members of the Chinese Highbinder Society known as the Sing Suey Ying tong; and that during the months of March and April, 1912, this tong was at war with the Hop Sing tong of highbinders.

As against the showing made by the people's case the defendants introduced the defense of an *alibi;* and in support thereof produced two Chinese witnesses Tom Git and Chow Soon, the former a merchant doing business at San Mateo, and the latter a merchant doing business in Stockton. Both of these witnesses testified that the defendants Ho Kim You and Chew Bock Hue were in the city of San Mateo on the evening of April 27th, the date of the homicide, at an hour which would have precluded the possibility of their being in Salinas city at the time of the homicide. The evidence of these Chinese witnesses was fortified by the testimony of John J. Reilly, who testified in substance that he had been a police officer in San Mateo for about four years; that his detail included San Mateo's Chinatown; that he was on duty in March and April, 1912, and that on the night of April 27, 1912, at about 9 o'clock he saw the defendant Ho Kim You and defendant Chew Bock Hue at the store of Wing Hing Sing at Railroad Avenue in the city of San Mateo; that he knew both of these Chinamen well because they had been in San Mateo for several weeks.

The codefendant On Git was separately tried and convicted. The judgment in his case was recently affirmed upon appeal to this court. The defendants Ho Kim You, and Chew Bock Hue were tried together. Each of said defendants, however, has taken a separate appeal to this court, and both cases come here upon independent records, but inasmuch as the record and the points presented in each case are precisely the same

we shall consider the two appeals together as if they had been perfected and presented upon a single record.

The defendants Ho Kim You and Chew Bock Hue were tried and convicted upon the theory that they had aided and abetted the commission of the homicide, and were therefore principals within the meaning of section 31 of the Penal Code. Over objection the trial court permitted the prosecution to prove that two days prior to the homicide the defendants Ho Kim You and Chew Bock Hue, and the codefendants On Git and Yee Yum, were traveling on the same railway train in the direction of Salinas, the scene of the homicide, and that the codefendant On Git and the defendant Chew Bock Hue were then armed with pistols. We see no error in the ruling. The circumstances, although slight in themselves, nevertheless when considered in conjunction with the evidence adduced upon the entire case, tended in a material measure to connect the defendants with the perpetration of the homicide, and were therefore rightfully admitted in evidence, notwithstanding that such circumstances incidentally included proof of the fact that two of the codefendants may at the same time have been violating the law against carrying concealed weapons. (*People* v. *Ebanks,* 117 Cal. 652, [40 L. R. A. 269, 49 Pac. 1049].)

The record shows, as a part of the cross-examination of Lee Hing, the following questions, answers, and rulings of the trial court:

"Q. Was there anything said before any shooting commenced at all? A. Yee Yum told On Git—saying to him 'Shoot Lee Lung Kai.'

"Q. You heard Lee Lung Kai's name mentioned? A. No. He says, 'Start shooting.'

"Q. Well, what did he say? Did he say 'Start shooting?' or did he say 'Shoot Lee Lung Kai?' A. He says 'Start shooting.'

"Q. Did Wong Duck tell you that on this trial you should say 'to shoot Lee Lung Kai'?

"Mr. Hanley: I object; that is not a proper means of cross-examination.

"The Court: He may answer.

"A. No, nobody taught me.

"Q. Did you ever at any time before testify that he told him to shoot Lee Lung Kai?

"Mr. Hanley: I object; that is not the proper way to lay a foundation. If any such testimony has ever been offered, it should be shown to him.

"The Court: The objection is sustained.

"Mr. Cook: We are trying to prove a negative.

"The Court: The objection is sustained."

The objection noted in the excerpt above quoted we think should have been overruled. The question objected to called for an answer which, if it had been in the negative, the jury, in the absence of a satisfactory explanation, might have deemed inconsistent with the present testimony of the witness, and therefore the question was well within the lines of legitimate cross-examination. (*People* v. *Dole,* 122 Cal. 486, [68 Am. St. Rep. 50, 55 Pac. 581].) Although the question, strictly construed, was without a proper foundation in that it was not preceded by express proof of the fact that the witness had previously given testimony concerning the homicide, nevertheless such question implied that the witness had given such testimony; and therefore, in the absence of a specific objection that it assumed a fact not in evidence, should have been allowed. (*People* v. *Hart,* 153 Cal. 261, [94 Pac. 1042].) Obviously the objection and the court's ruling were grounded upon the erroneous assumption that the witness could not, under the provisions of section 2052 of the Code of Civil Procedure, be required to answer the question until the record of his previous testimony had been shown to him. In no sense can the question objected to standing alone be considered an impeaching question; and therefore it did not fall within the inhibition of the code section last cited. (*People* v. *Jones,* 160 Cal. 358, [117 Pac. 176].) Such question, dependent on the character of the answer, might have been subsequently employed as the foundation for the attempted impeachment of the witness; but plainly its primary purpose was to test "the memory, the bias, the accuracy or the sincerity of the witness." (*People* v. *Manasse,* 153 Cal. 10, [94 Pac. 92].) A negative answer would have satisfied the primary object of the question; while, on the other hand, an affirmative answer might have been met and overcome by the introduction in evidence of a record of the previous testimony

of the witness. A proper objection, however, would have given counsel for the defendant an opportunity to obviate the defect in the question. The objection as made did not afford any such opportunity; and therefore the ruling of the court deprived counsel for the defendant of the right to proceed along a legitimate line of cross-examination. (*People v. Hart,* 153 Cal. 261, [94 Pac. 1042].) The error of the ruling, however, was subsequently cured by counsel for the defendant reading in evidence the record of the testimony given by the witness at the coroner's inquest, which, although in the main conforming to his testimony given at the trial of the case in the court below, contained no statement that he had heard Yee Yum say to On Git "Shoot Lee Lung Kai." It will thus be seen that the object of the question objected to was ultimately accomplished by another method, which was not only much more effective but somewhat to the detriment of the prosecution, in that the witness was not given an opportunity to explain why his testimony at the coroner's inquest did not contain all of the details testified to by him upon the trial of the present case.

There was no error in the ruling of the trial court refusing to strike out certain answers of the same witness upon the ground that those answers were not responsive to the questions. The defendants' motion to strike out, in order to prevail, should have been specifically directed to the unresponsive part of the answers. Having been directed to the answers in their entirety the motion in each instance was properly denied.

Complaint is made that counsel for the defendant was not permitted to ask this same witness upon cross-examination whether, at a time when the defendant was pointed out to him, he, the defendant, wore slippers or American clothes, and how he was dressed. The record shows that the witness in question had previously testified upon cross-examination and with considerable detail concerning the defendant's dress and appearance upon the occasion referred to; and it does not appear to us that the court abused its discretion in refusing to permit further cross-examination upon the same lines.

H. J. Shannon was a witness for the people. He in company with a Chinaman named S. K. Lee, drove the automobile from Santa Cruz in which the defendants were arrested at

Moss's Landing. Among other things this witness testified that when the automobile arrived at Moss's Landing Lee got out and "went to look for four Chinamen." The motion to strike out the quoted statement should have been granted. The question was answered before counsel had an opportunity to object, and the testimony of the witness in the particular stated was either the expression of a mere opinion, or else it was hearsay. But the error of the ruling was inconsequential in view of the fact that the circumstances following the arrival of the automobile at Moss's Landing, as later narrated without objection by the witness (Shannon) tended strongly to show that Lee got out of the automobile to look for four Chinamen. In this behalf the witness testified that he waited quite a while after Lee left the automobile, and finally saw a "bunch of Chinamen . . . there were four Chinamen, and they all got into the car"; whereupon the witness "asked them where the other fellow (Lee) was, and they said he would not come . . . and two of them got out and started to look for him (Lee)." It was further shown without objection that the witness asked the four Chinamen who would pay for the use of the car, and they replied that their friend Lee would pay. Clearly this testimony would have justified the jury in arriving at the conclusion that Lee did get out of the automobile at Moss's Landing to look for four Chinamen and that he eventually found them.

The witness Reilly for the defense, during the course of his cross-examination, testified in effect that he saw the two defendants Ho Kim You and Chew Bock Hue at about the hour of 9 o'clock on the evening of the homicide at the store of Wing Hing Sing in San Mateo, and that one of the defendants was inside the store and the other standing on the street outside the store. The witness was then asked, "Didn't you say upon the preliminary examination that you saw them (the defendants) in the store at the telephone?" The witness replied "No, sir," whereupon counsel for the defendants objected to the question being answered until the transcript of the testimony given by the witness at the preliminary examination was shown to him. The objection was overruled. It will be noted that the question was answered before the objection was made. It is not claimed, nor does it appear, that counsel did not have an opportunity to object before the

answer was given.    This being so, the objection to the par-
ticular question under consideration came too late, and there-
fore was rightfully overruled.    The cross-examination, how-
ever, was continued to a slight extent upon the same lines, and
evidently subject to the same objection.    When pressed fur-
ther the witness answered in effect that he was not positive
as to whether or not he had stated in his previous testimony
that he had seen both defendants inside the store at the tele-
phone.    The trial court had previously sustained a similar
objection of the prosecution; and assuming (as evidently the
trial court did) that this latter testimony was given subject
to the previous objection, consistency, if not the law (Code
Civ. Proc., sec. 2052), should have prompted the trial court
to sustain the objection of the defense.    However, it must be
an exceptionally clear case of resulting injury to justify a
reversal for such an error; and we are satisfied, after a perusal
of the entire testimony of the witness, that if he did testify
at the preliminary examination as claimed by the prosecu-
tion, such testimony was not inconsistent with his testimony
at the trial to the effect that he had, at a specified hour on
the night of the homicide, seen one of the defendants in the
store and the other outside on the street.    This being so, the
ruling did not result in substantial injury to the defendants.

Several other rulings of the trial court are complained of;
but upon examination we find that they are of minor import-
ance, and were not erroneous.

The record shows that the codefendant Yee Yum and the
defendants in the present case, at one stage of the preliminary
proceedings in the trial court, demanded separate trials.    It
seems, however, that two separate and independent juries were
impaneled at the same time, one for the trial of the defendant
Yee Yum, and the other for the trial of the defendants in
the present case, Chew Bock Hue, and Ho Kim You.    There-
upon the trial of both cases proceeded simultaneously before
both juries up to a certain point in the evidence, that is to
say, the principal witnesses for the people Lee Hing and Tai
Kai gave their testimony but once and in the presence of both
juries.    Upon the conclusion of their testimony the trial of
Ho Kim You and Chew Bock Hue was halted, and the jury
sitting upon their case temporarily excused.    The trial of the
defendant Yee Yum then proceeded separately.    We think

that the record on appeal in each of the cases now before us as originally presented warrants the inference that the then counsel for the defendants, who conducted both trials, consented to the concurrent trial of both cases; and the record as amended by a further transcription of the proceedings had in the court below, shows that Mr. Cook, counsel for the defendants, who was in charge of the trial of the case, and who was also one of the counsel for the codefendant Yee Yum, expressly stated in open court that he had no objection to the impanelment of two juries and the concurrent trial of the two cases. This being so, none of the defendants will now be heard to complain that their demand for a separate trial was denied, or that they were prejudiced by the procedure thus adopted.

The claim is made that the evidence is insufficient to support the verdict against these particular defendants in this, that it was not shown that they aided and abetted the codefendants On Git and Yee Yum in the commission of the homicides. Assuming all of the evidence for the people to be true, it is the contention of counsel for the defendants that the fact of their presence at or near the entrance of the room in which the homicide occurred was not, either alone or in conjunction with the other facts of the case, legally sufficient to warrant the finding implied from the verdict that the defendants had aided and abetted the commission of the homicide.

With this contention we do not agree. Of course the mere presence of the defendants Ho Kim You and Chew Bock Hue at or near the scene of the homicide would not in and of itself support the verdict; but such presence was a circumstance which, when coupled and considered with all of the circumstances immediately preceding, attending, and following the homicide, tended strongly to show complicity in the crime. (*People* v. *Woodward,* 45 Cal. 293, [13 Am. Rep. 176].) It must be conceded that the evidence adduced upon behalf of the people shows, if true (1) that all of the defendants belong to the same highbinder society known as the Suey Sing tong; and that this tong was at war at the time of the homicide with the highbinder society known as the Hop Sing tong; (2) that prior to the homicide all four of the defendants resided in the same house in San Mateo; (3) that two days prior to the homicide the defendants in these cases Ho Kim You and Chew

Bock Hue, and the two codefendants On Git and Yee Yum, who actually did the shooting, traveled by rail upon the same train in the direction of Salinas City from San Mateo to Castroville, and that On Git and Chew Bock Hue were armed with pistols; (4) that nothwithstanding the fact that each of the defendants occupied separate seats in separate cars of the train and were apparently unacquainted with one another, they all left the train at Castroville, and assembled at the south end of the station in the rear of the train and in the vicinity of the freight sheds; (5) that the defendants in these cases Ho Kim You.and Chew Bock Hue were seen standing at the door of the building in which the homicide occurred at the time of the homicide; (6) that five days after the homicide all four of the defendants were arrested between 11 and 12 o'clock at night at Moss's Landing about twelve miles from Salinas, just as they were about to enter an automobile that had been brought from Santa Cruz by a fellow tongman.

It will thus be seen that the evidence, direct and circumstantial, shows that although the defendants were well acquainted with one another, nevertheless immediately preceding the homicide their movements were studied and stealthy, with the apparent purpose of avoiding attention and creating the impression that they were utter strangers to one another. That this was their purpose is evidenced by their conduct on the train on the way to Salinas, and their subsequent concerted and clandestine meeting in an obscure part of the railway station at Castroville. Added to all of this is the further fact, incriminating and unexplained, that the defendants Ho Kim You and Chew Bock Hue were in an isolated spot in the dead of night in the company of On Git and Yee Yum several days after the homicide, within a comparatively short distance of Salinas City. The cumulative effect of all of the circumstances immediately preceding, at the time of and following the homicide, readily responds to the inference that the defendants Ho Kim You and Chew Bock Hue were willfully and knowingly stationed at the door of the premises where the homicide occurred, as sentinels to watch for and warn against outside interference with the murderous work of the codefendants On Git and Yee Yum. This being so, the conclusion is inevitable that the evidence upon the whole case, direct and circumstantial, is amply sufficient to sustain the

verdict upon the theory that the defendants in question aided and abetted the commission of the homicide.

Counsel for the defendants complain of the misconduct of the special prosecutor who was associated with the district attorney in the trial of the case. Several assignments of misconduct are made, and we shall note them in the order of their making.

The first objection under this head relates to a question propounded upon cross-examination to the witness Reilly, and will be best shown by the following excerpt from the record:

"Q. You know Judge Cook, don't you? A. Yes.

"Q. Did you see him . . . before the On Git case? A. No, sir.

"Q. Did you go up to his office? A. No, sir.

"Q. . . . Then the conversation that Judge Cook had with Frank Sargent that you asked $500 in the On Git case is not true, is it?

"Mr. Cook: I assign the statement . . . as prejudicial error, maliciously made to prejudice the jury, as no such statement was made by me to Mr. Frank Sargent or anybody else. I never saw this man and never talked with him.

"Mr. Hanley: That is not true.

"The Court: The jury will entirely disregard the statement made by Mr. Hanley, and the question is disallowed. You gentlemen will pay no attention to that statement.

"Q. That is not true? A. That is not true."

It is insisted that the mere asking of the question concerning the alleged conversation of Judge Cook with Frank Sargent was an intentional infringement of the rule of professional conduct which should govern prosecuting officers in the trial of a criminal case; and that such conduct was sufficiently grievous to warrant the reversal of the judgment. It would be a wild and wide stretch of imagination to say that the form of the question under discussion was the result of ignorance or inadvertence. To the contrary, it is very evident that the question was deliberately framed and asked for the purpose of placing before the jury in a highly irregular manner a matter which, if true, might have been rightfully and decently developed in evidence without violating the settled and well understood rules of criminal procedure. The disposition of the special prosecutor to disregard the procedure provided by

law, even in a case where a man was on trial for his life, is well illustrated by his persistence in repeating the objectionable question in the very teeth of the declaration of the trial court that the question would not be allowed. This was a deliberate defiance of the mandate of the law, which the trial court might well have punished as a contempt of court, or by an order excluding the offender from further participation in the trial of the case. This point will be finally disposed of later on in this opinion.

Certain rulings of the trial court made upon the cross-examination of Chow Soon and Tom Git, witnesses for the defense, were undoubtedly erroneous. The purpose of this cross-examination in part was to elicit certain alleged facts concerning the private life of the witness Chow Soon, and in part to show that the defendant Chew Bock Hue and the codefendant On Git had been several times arrested for carrying concealed weapons, and that the defendant Chew Bock Hue had been previously arrested under the name of Ah Joe for the crime of assault with intent to commit murder. The questions objected to, however, failed of their purpose in so far as the answers of the witnesses were concerned. In each instance the answer was in the negative. Therefore the error of the rulings in question must be held to have been harmless. (*People* v. *Brown,* 76 Cal. 573, [18 Pac. 1078] ; *People* v. *Barney,* 114 Cal. 554, [47 Pac. 41] ; *People* v. *Chin Hane,* 108 Cal. 597, [41 Pac. 697].) It is insisted, nevertheless, that the mere asking of the questions last noted was prejudicial misconduct. No justification is attempted, and none could be made, of the cross-examination of the witness Chow Soon upon the subject of his having lived with a prostitute in Salinas. The fact that the witness was a Chinaman should not have operated to suspend the rules of evidence which ordinarily govern the impeachment of witnesses, nor does such fact mitigate the offense of willfully violating those rules. It must be presumed, however, that the jury knew and understood that the mere asking of a question did not constitute evidence; and the trial court of its own motion ultimately charged the jury to be governed in its deliberations solely by the evidence which was given by the witnesses, and not to be influenced by any matters outside of the evidence which might have been injected into the case by counsel on either side. Presumably

24 Cal. App.—30

the jury heeded the charge of the court. (*People* v. *Bradbury,* 151 Cal. 675, [91 Pac. 497]; *People* v. *Burke,* 18 Cal. App. 72, [122 Pac. 435].)

Equally indefensible is the cross-examination of the witness Tom Git. Conceding for the purpose of this discussion that the direct examination of this witness warranted cross-examination as to the presence of the defendants in San Mateo in the afternoon and evening of April 27, 1912, the date of the homicide, nevertheless it was highly improper for the special prosecutor to include in his questions the claimed collateral criminal conduct of the defendant Chew Bock Hue or any of his codefendants. Such questions were plainly intended to impress the jury with the belief that the defendant Chew Bock Hue was a lawless and desperate character and the associate of men of like character. That impression in turn was well calculated to induce the belief in the minds of the jury that the defendant Ho Kim You, on trial with Chew Bock Hue, was likewise an associate of lawless and desperate men. Such a belief, as a matter of course, must have had some weight with the jury to the detriment of the defendants; and therefore we would have some difficulty, even under the provisions of section 4½ of article VI of the constitution, in affirming the judgment, were it not for the conceded fact that elsewhere in the record is to be found competent testimony, offered and received without objection, which tended to show that the defendants on trial and each of the codefendants were "highbinders, belonging to the Chinese fraternity known as the Sing Suey Ying tong, and that during the months of March and April, 1912, this tong was at war with the . . . Hop Sing tong or highbinders and hatchet men." The term "highbinder," although of local origin, is generally understood as meaning "A rough, and now specifically one of a Chinese secret society said to be blackmailers." (Webster's Dictionary.) It is a matter of common knowledge that the several Chinese highbinder societies existing in this state frequently declare war upon one another, and that such wars are usually fought to the death by the gun and hatchet men of the opposing forces. In short, it is a matter of common knowledge that a highbinder is a man of evil character and murderous tendencies. Therefore it may be fairly said that the irregularity of suggesting to the jury, through the medium

of the questions under discussion, that the defendant Chew Bock Hue and each of his codefendants were men of lawless and desperate character was without substantial prejudice in the face of the fact, subsequently shown by proper proof, that all of the defendants were not only the associates of high-binders but were themselves highbinders.

It is the rule generally that misconduct intended and likely to result in prejudice will not suffice to justify the granting of a new trial if upon the whole case it can be said that the possible effect of the claimed misconduct was subsequently removed by a proper admonition of the trial court to the jury, or that such effect was offset by the introduction of competent evidence concerning the matters and things involved in such misconduct. Regardless of the varying and, at times, in the past, inconsistent application of the rule in this behalf, we are convinced that the weight of authority in this and other jurisdictions favors the assertion that there is no presumption that misconduct will prevail with a jury to the detriment of a defendant in the face of an admonitory charge to disregard the same; but that, to the contrary, the presumption is ordinarily that the jury heeded the charge of the court. (*People* v. *Kramer,* 117 Cal. 647, [49 Pac. 842]; *People* v. *Salas,* 2 Cal. App. 537, [84 Pac. 295]; *People* v. *Amer,* 8 Cal. App. 137, [96 Pac. 401]; *Lanigan* v. *Neely,* 4 Cal. App. 760, [89 Pac. 441]; *People* v. *Bradbury,* 151 Cal. 675, [91 Pac. 497]; *People* v. *Burke,* 18 Cal. App. 72, [122 Pac. 435].) A careful consideration of the record and the evidence presented in the present case convinces us that the harm resulting from the mere asking of the questions complained of was in some instances minimized by the answers of the witnesses; and in the remaining instances counterbalanced by competent testimony; and that upon the whole such harm was ultimately undone by the trial court's admonition and charge to the jury to disregard the matters irregularly suggested, and be guided in arriving at a verdict solely by the evidence rightfully received.

If, upon a consideration of the evidence rightfully and regularly adduced upon the whole case, the guilt of the defendants appeared to us to be reasonably doubtful, we would have but little difficulty and less hesitation in declaring that the misconduct complained of contributed to the verdict,

and that as a consequence the conviction of the defendants was a miscarriage of justice. But in addition to the fact that, in our opinion the effect of the several instances of misconduct was overcome, either by the charge of the court or by the subsequent introduction of competent and relevant evidence to the same point, we are not prepared to say, after a painstaking examination of the entire evidence, that the trial and conviction of the defendants did result in a miscarriage of justice. A calm, careful, and impartial consideration of the evidence in all of its various phases and angles, and without reference to or consideration of the improper suggestions contained in the misconduct complained of, reasonably satisfies us of the guilt of the defendants. And in addition we are convinced that the defendants would have been convicted without the aid or interposition of the irregular and improper suggestions of the special prosecutor. Therefore such irregularities cannot be held to be a controlling or even a contributing cause of the verdict. It follows that the misconduct complained of will not warrant a reversal of the case. (*People* v. *Lawler,* 21 Cal. App. 63, [131 Pac. 63].)

We cannot refrain from saying, however, that conduct on the part of prosecuting officers of the character under discussion not only impairs the orderly and effective administration of justice, but is well calculated to bring the profession of the law into disrepute. The increasing instances of flagrant and willful violations of the elementary rules of procedure which are being constantly called to our attention confirms us in the belief that the impression is abroad, or at least is entertained by some members of the profession, that the provisions of the recently adopted section 4½ of article VI of the constitution furnish a cure for all the ills of procedure and practice resulting from irregularities, great or small, ignorantly or intentionally perpetrated, during the course of a criminal trial. This is indeed an erroneous impression, which can and will be corrected, and the safe and sane administration of justice assured by a resort to the remedy of ordering a new trial where the guilt of the defendant is to us doubtful, and it further appears to our satisfaction that the irregularity contributed materially to the procurement of the verdict. (*People* v. *O'Bryan,* 165 Cal. 55,

[130 Pac. 1042] ; *People* v. *Fleming,* 166 Cal. 357, [136 Pac. 291] ; *People* v. *King,* 23 Cal. App. 259, [137 Pac. 1076].)

Although section 4½ above referred to makes it the duty of this court to affirm a judgment of conviction in a criminal case regardless of any error as to any matter of pleading or procedure, where, upon a consideration of the entire record, including the evidence, we are of the opinion that the conviction has not resulted in a miscarriage of justice, nevertheless it might be well for trial courts and prosecuting officers generally to keep in mind, in conjunction with their oaths of office, the fact that such provisions of the constitution were not "designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same constitution, or to overthrow all statutory rules of procedure and evidence in criminal cases." (*People* v. *O'Bryan,* 165 Cal. 55, [130 Pac. 1042].)   Incidentally it may not be amiss to state that the determination of this court as to whether or not an irregularity in pleading or procedure has contributed to a miscarriage of justice in any given case, must depend largely if not entirely upon the opinion which the justices of this court collectively form of the guilt or innocence of the defendant after having weighed the evidence in the individual case before us.   In short, our determination as to what is or is not a miscarriage of justice must in every case be a mere matter of opinion which, in view of the varying facts of each case, cannot be based upon any hard and fast rule, but necessarily must be formed from the cold record without the valuable and oftentimes indispensable aid of hearing and seeing the witnesses who testified at the trial.   Therefore, trial courts and prosecuting officers, in the trial of criminal cases, should adhere closely to the settled lines of criminal procedure at every stage of the case, and thereby be assured that they are neither aiding in nor contributing to a miscarriage of justice, which, in cases where the evidence is evenly balanced, or the guilt of the defendant appears to us to be doubtful, will surely be reversed.

The judgment and order appealed from in each of the above entitled causes are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition for a rehearing of these causes was denied by the district court of appeal on June 12, 1914, and a petition to have the causes heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on July 11, 1914.