## COLQUITT DAVIS v. STATE.

No. A-8121. Opinion Filed July 31, 1931.
Dissenting Opinion Aug. 21, 1931.
(1 Pac. [2d] 824; 2 Pac. [2d] 965.)

Stephen A. George, for plaintiff in error.

J. Berry King, Atty. Gen., and Ed Crossland, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted of murder in the district court of Carter county, and his punishment fixed at death.

The record discloses that at the time charged defendant and his brother were at the town of Wirt, in the possession of a stolen automobile. Two deputy sheriffs, W. C. Keirsey and Vernon Cason, went to the place where the defendant and his brother were. Keirsey entered and defendant and his brother pointed pistols at him, disarmed him; about this time Cason came into the room; a shooting followed in which Keirsey received a mortal wound

from which he died the next day. The proof amply sustains the charge of murder. Stephen A. George was appointed by the court as counsel for defendant.

It is first argued that the court erred in overruling defendant's application for a change of venue. Section 2628, Comp. Stat. 1921, among other things, provides that at any time before the trial is begun, on the application of defendant the cause may be removed from the county in which it is pending to some other county, when it shall appear that the minds of the inhabitants of the county are so prejudiced against him, a fair and impartial trial cannot be had therein. Before entering upon the trial, counsel for defendant suggested to the court that he had been informed of the state of feeling in that county, and that it was probably his duty to apply for a change of venue, and asked to reserve the right to do that at any time before the jury was completed. The trial court then stated that he gave him permission to do so. The trial was then entered upon. A panel of 50 jurors was examined and there were two additional drawings of jurors made, and on the second morning of the trial counsel presented a petition for a change of venue, which was overruled by the court. A sufficient showing to require a change of venue is not made by the petition. In this connection, it may be well to say that the proceedings are irregular. As stated, section 2628, supra, requires the application for change of venue to be made before the trial is begun. The purpose of this requirement is to avoid any question of jeopardy and to fix the place of trial before the county is put to the expense of making an examination of the jurors and the calling of additional jurors, as was done in this case. If an application for change of venue is to be made, it must be made and disposed of before beginning the trial. The right is waived

by entering into the trial. A district judge is without authority to extend the time for the filing of a petition for change of venue until after the trial has begun.

The authority of the trial court to assess the death penalty in a case of murder where the jury do not designate such penalty in their verdict is challenged. The record discloses that, after the case had been finally submitted to the jury and they had deliberated for some time, they were brought into court and upon inquiry informed the court that they had agreed upon a verdict, but could not agree as to the punishment, and would request the court to assess the punishment. The court said:

"Mr. Foreman, and you gentlemen of the jury, it is a great responsibility you ask this court to take under the law. You have a right to ask that, but before I accept the request I will ask that you go back to your room and see if you can't agree on the punishment. You have a right to do as you have under the law, but this is a grave responsibility and if you cannot agree on the punishment you may ask this court to assess the punishment, however, go back and see what you can do about it,"

This amounts to an invitation to the jury to report a disagreement as to the punishment, and to leave the assessing of the punishment to the court. In so saying, we do not wish to be understood as criticising the able trial judge who presided. The jury then returned to the jury room and deliberated for an hour and were again brought into court and again stated that they had not agreed on the punishment, and, over the objection of defendant, the court received the verdict finding defendant guilty of murder, reporting a failure to agree on the punishment and requesting the court to assess the punishment. An objection to this procedure was made at the time, and was again presented at the time of sentence. The court then

made extended remarks upon the question, quoting sections 1739 and 2750, and announced in substance he was of the opinion a trial judge had authority to assess the punishment in a case of murder and proceeded to sentence defendant to suffer death. The Attorney General, in effect, has confessed error; after reviewing the statutes and the authorities, he concludes the brief of the state in these words:

"In view of the above authorities, it will be seen that the trial court in assessing the death penalty in this case exceeded its power and authority."

In determining the authority of a trial court to assess the punishment in a case of murder, three sections of our statute should be considered and harmonized:

Section 1739, Comp. Stat. 1921, which reads:

"Any person convicted of murder shall suffer death, or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith. But upon a plea of guilty the court shall determine the same."

Section 2750, Comp. Stat. 1921, as follows:

"In all cases of a verdict of conviction for any offense against any of the laws of the state of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

Section 2751, Comp. Stat. 1921, as follows:

"Where the jury find a verdict of guilty, and fail to

agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

It is obvious that sections 2750 and 2751, supra, are general in their nature and apply in all cases unless there is a special statute overriding the general provisions of these two sections. They are broad enough in their terms and provisions to include murder, in the absence of a special statute dealing with that subject. A controlling rule of statutory construction of universal application is that where a general statute and a special statute conflict, the special prevails over the general statute.

The rule of construction is laid down by 3 Cyc. 1151, in these words:

"Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together, and harmonized if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication."

The Supreme Court of this state and this court have followed this general rule. See the following cases: Carpenter v. Russell, 13 Okla. 277, 73 Pac. 930; Gardner v. School District 87, Kay County, 34 Okla. 716, 126 Pac. 1018; Union Savings Association v. Burns, 74 Okla. 1, 176 Pac. 227; Muskogee Times-Democrat v. Board of County Commissioners Muskogee County, 76 Okla. 188,

184 Pac. 591; Citizens' State Bank of Vici v. Gettig, 77 Okla. 48, 187 Pac. 217; Greer v. Bird, 93 Okla. 246, 220 Pac. 579; Hays et al. v. City of Muskogee, 117 Okla. 158, 245 Pac. 842; Hill et al. v. Webb et al., 127 Okla. 249, 260 Pac. 450; Oklahoma Nat. Gas Co. v. McFarland, 143 Okla. 252, 288 Pac. 468; Lovins v. State, 49 Okla. Cr. 200, 293 Pac. 273.

Section 1739, supra, is a special statute dealing with the subject of murder only. In the matter of punishment for murder, it therefore follows that section 1739, supra, prevails and takes precedence over the general provisions of sections 2750, 2751 supra. In all other cases, including manslaughter and capital cases other than murder, the provisions of sections 2750, 2751, control.

The attention of the learned trial judge surely was not called to this rule, nor to the holding of this court in the cases of Hopkins v. State, 9 Okla. Cr. 104, 130 Pac. 1101, 1103, Ann. Cas. 1915B, 736, and Noel v. State, 17 Okla. Cr. 308, 188 Pac. 688, 690. In Hopkins v. State, supra, for the purpose of preventing misapprehension and to aid trial courts to avoid the error here committed, this court said:

"However, as there seems to be some misapprehension of the respective sections prevalent, we will briefly state our views on the question. Section 2275 [now 1739, C. O. S. 1921] authorizes the penalty of death at the discretion of the jury and, if they find the defendant guilty of murder, they must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor; and, when a plea of not guilty was entered to an indictment or information charging murder, the extreme penalty can be adjudged only upon the verdict of a jury fixing the punishment by death. In such cases the general provisions of sections 2028 and 2029 of the Penal Code [now sections 2750, 2751, C. O. S. 1921] have

no application, only upon a plea of guilty the court shall determine the same.' Opinion of the Judges, 6 Okla. Cr. 18, 115 Pac. 1028."

Again in the case of Noel v. State, supra, this court said:

"The Penal Code (section 2319, Rev. Laws) requires the jury to fix the punishment for murder, and authorizes the penalty of death at the discretion of the jury; and, if they find the defendant guilty of murder, they must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor; this, in order that the defendant may not be sentenced to suffer death, except in the discretion of the jury, and when a plea of not guilty is entered to an indictment or information charging murder, the extreme penalty can be adjudged only upon the verdict of a jury fixing the punishment by death, 'but upon a plea of guilty the court shall determine the same.' Hopkins v. State, 9 Okla. Cr. 104, 130 Pac. 1101, Ann. Cas. 1915B, 736. The judgment in this case does not recite the fact that the defendant was convicted of murder by the verdict of a jury assessing the death penalty."

The rule here announced has been followed by the courts of other states. In People v. Hall, 199 Cal. 451, 249 Pac. 859, 861, the Supreme Court of that state in construing a statute very similar to section 1739, supra, said:

"The duty of the jury was thus made plain. Its discretion was to be exercised in the manner pointed out in the instructions and under section 190 of the Penal Code that discretion applied both to the fixing of the death penalty and the penalty of life imprisonment. The result of the exercise of that discretion must appear on the face of the or, in the absence of such words, by necessary inference in the light of the instructions. It may, therefore, not rightly be said that, when the jury found the defendant guilty of murder in the first degree, but disagreed as to verdict either by the use of specific words to express it,

the penalty, it thereby fixed the death penalty. It was the duty of the jury to exercise its discretion and fix the penalty. Failing to do so, no penalty was determined upon. The jury could not exercise its discretion and not exercise it in one and the same verdict. When a verdict, such as the one here under consideration, discloses on its face that such discretion was not exercised as to either penalty, it is not a verdict upon which the court is authorized to pronounce judgment of either death or life imprisonment. In receiving such a verdict and in imposing the sentence of death upon the defendant, the court usurped the function of the jury, and its judgment was a nullity. The proceeding therefore resulted in a mistrial, and the judgment must be reversed. It is obvious, from what has been said, that the trial court should not have received the verdict in its present form, but should have caused the jury to return a verdict in conformity with law, or should have discharged the jury and retried the cause. It is earnestly insisted by the respondent that the defect in the form of the verdict constitutes no more than 'matter of procedure'; that under section 4½ of article 6 of the Constitution the judgment should not be reversed, for the reason that, upon an examination of the entire cause, including the evidence, the guilt of the defendant is shown, and that an affirmance of the judgment would not constitute a miscarriage of justice. We cannot agree that the defect in the verdict was merely an error in 'matter of procedure' as contemplated by said section 4½. On the contrary, the defect involved matter of substantial and substantive right. It was in effect the denial of a trial by jury. The amendment by which said section 4½ was added to the Constitution was not 'designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same Constitution or to overthrow all statutory rules of procedure and evidence in criminal cases.' People v. O'Bryan, 165 Cal. 55, 130 P. 1042; People v. Frey, 165 Cal. 140, 131 Pac. 127; People v. Wilson, 23 Cal. App. 513, 138 Pac. 971; People v. Ho Kim You, 24 Cal. App. 451, 141 Pac. 950. Trial by jury is guaranteed to every person charged with a felony, and the de-

nial of that right is in itself a miscarriage of justice. See Farrell v. City of Ontario, 39 Cal. App. 351, 178 Pac. 740. In view of the fact that the cause must be remanded for a new trial, we express no opinion as to the sufficiency of the evidence to sustain a verdict, but this much may properly be said, generally, that, however degraded and hardened a criminal the evidence may disclose an accused to be, he is entitled under the Constitution to trial by jury. In legal effect this right was denied to the defendant in the case at bar. The proceedings before the trial court amounted to the same as if the court had denied the defendant a trial by jury in the first instance, and, having heard the evidence and found the defendant guilty, proceeded to impose the judgment of death. Such a judgment may not stand even though there be the clearest proof of guilt."

The Supreme Court of Tennessee in Mays v. State, 143 Tenn. 443, 226 S. W. 233, in syllabus 1 held:

"Under Acts 1919, c. 5, providing that, when any person is convicted of murder in the first degree, the jury shall fix the punishment, which shall be death, or the jury may, if of opinion that there are mitigating circumstances, fix the punishment at imprisonment in the penitentiary for life, or for some period over 20 years, the exclusive power to fix the penalty is intrusted to the jury, and a verdict not fixing the punishment and a judgment thereon are nullities."

The Supreme Court of Arkansas in Simpson v. State, 56 Ark. 8, 19 S. W. 99, 102, in modifying a case in which the jury had returned a verdict of murder in the first degree, held in substance the facts did not warrant a verdict of murder in the first degree, and that the judgment should be reduced to the second degree, the court saying:

"The only error committed is in the excess of the punishment. In other states where statutes authorize the appellate courts to modify the judgments of the circuit

courts in criminal cases, the remedy in cases like this is found, not in a new trial, but by reducing the punishment to make it appropriate to murder in the second degree. The courts find no constitutional obstacle to such a practice. State v. Fields, 70 Iowa, 196, 30 N. W. 480; State v. McCormick, 27 Iowa, 402; Hogan v. State, 30 Wis. 438, 439 [11 Am. Rep. 575]; Johnson v. Com., 24 Pa. 386. In this case the jury have found the prisoner guilty of murder; but, having found a degree of murder which the proof does not warrant, the verdict stands for the offense of murder, but fails as to the degree. It is then as though the jury had found him guilty of murder, but failed to assess the punishment. The two degrees of murder are not distinct offenses. They are only statutory regulations of the punishment of the one offense of murder, to be inflicted according to the mental state in which the crime is committed. Thompson v. State, 26 Ark. 323; 2 Bish. Crim. Proc. § 565. It is true the statute requires the jury to find the degree of murder, but that is done for the purpose of having them take into consideration the distinguishing features of the two degrees, in order that the prisoner may not be sentenced to capital punishment without a special finding for the first degree. If their verdict does not show the intention to find the first degree, no sentence for that degree can follow; and, if the verdict is 'guilty as charged,' no sentence for murder can be pronounced, because, other grades of homicide being charged in the indictment, it is not known that a verdict of murder was intended. Thompson v. State, supra; Curtis v. State, 26 Ark. 439; Trammell v. State, 26 Ark. 534. But all murder which is not of the first degree is of the second; and when there is a verdict for murder, and no punishment is assessed by the jury, the prisoner is not prejudiced if the verdict is referred to the lower degree of the offense."

As will be seen, the Hall Case and the Mays Case hold that a verdict finding an accused guilty of murder and failing to designate the punishment is a nullity. In this particular, we think the California and Tennessee courts

were in error. The jury in those cases reached a verdict in which all concurred, that the accused was guilty of murder. They agreed that he should be punished for murder, but a part of the jury did not agree that the extreme penalty should be assessed. It is a narrow and technical rule, entirely out of line with modern jurisprudence, to hold that such verdict is a nullity. The failure of the jury to designate the punishment does not render the verdict entirely ineffective. It is, nevertheless, a verdict complete in one particular, that finding the accused guilty of murder, but defective in another particular, in failing to designate the punishment. The language of section 1739, supra, viewed literally, requires that, whether the punishment be death or life imprisonment, it must be designated by the jury in their verdict. It is evident, however, that the primary purpose of the statute was that the death penalty in a trial for murder, where a plea of not guilty is interposed, should not in any event rest with the trial court, but could be assessed only upon the verdict of the jury, designating the death penalty. If the punishment should be life imprisonment, the same solemnity would not be required to assess the punishment, and it need be designated in the verdict only for the purpose of excluding the death penalty, the only other possible punishment. Thus, under this statute life imprisonment could be assessed by the trial court for the included offense of manslaughter in the first degree long prior to the adoption of sections 2750, 2751, supra, which came into existence after statehood. The trial court being without authority to assess the death penalty in this case, the judgment must be modified to the minimum penalty of life imprisonment. The judgment is, therefore, modified by striking out the penalty of death and substituting therefor imprisonment in the penitentiary for life at hard labor. As modified, the case is affirmed.

398

CHAPPELL, J., concurs. DAVENPORT, P. J., dissents.

DAVENPORT, P. J. (dissenting). I do not concur in the majority opinion of this court, 51 Okla. Cr. 386, 1 Pac. (2d) 824, but think a new trial should be awarded the plaintiff in error.

The plaintiff in error was by information charged with the crime of murder. In his trial, the court, in its seventh instruction, advised the jury in part as follows:

"Should you find the defendant guilty of murder, it is your duty to designate in your verdict whether such punishment shall be by death or by imprisonment in the state penitentiary at hard labor for life."

The record discloses that, after the case had been finally submitted to the jury, and they had deliberated for some time, they were brought into court, and upon inquiry informed the court they had agreed upon the verdict, but could not agree as to the punishment, and requested the court to assess the punishment. The court then said:

"Mr. Foreman, and you gentlemen of the jury, it is a great responsibility you ask this court to take; under the law you have the right to ask that but before I accept the request I will ask that you go back to your room and see if you can't agree on the punishment. You have a right to do as you have under the law but this is a grave responsibility, and if you cannot agree on the punishment you may ask this court to assess the punishment, however, go back and see what you can do about it."

It is further disclosed by the record the jury returned to the jury room and deliberated for an hour and again stated they had been unable to agree on the punishment, and, over the objections of the defendant, the court received the verdict finding the defendant guilty of murder, reporting a failure to agree on the punishment and re-

questing the court to assess the punishment. The defendant objected to this procedure of the court, and again presented his objection at the time he was sentenced.

It also appears that the court at the time made extended remarks upon the question, quoting sections 1739 and 2750, C. O. S. 1921, and announced that he was of the opinion that he had the authority to assess the penalty. Section 1739, C. O. S. 1921, reads as follows:

"Any person convicted of murder shall suffer death, or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith. But upon a plea of guilty the court shall determine the same."

Section 2751, C. O. S. 1921, is as follows:

"In all cases of a verdict of conviction for any offense against any of the laws of the state of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

Section 2751, C. O. S. 1921, is as follows:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

It is clearly shown that sections 2750 and 2751, supra, are general in their nature and apply in all cases in the absence of a special statute overriding the general pro-

visions of these two sections. The rule of construction is laid down in 36 Cyc. 1151, in these words:

"Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way the two should be read together, and harmonized if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication."

The Supreme Court of this state and this court have followed this general rule. Carpenter v. Russell, 13 Okla. 277, 73 Pac. 930; Hill et al. v. Webb, 127 Okla. 249, 260 Pac. 450; Lovins v. State, 49 Okla. Cr. 200, 293 Pac. 273.

Section 1739, C. O. S. 1921, supra, is a special statute dealing with the subject of murder only, and, in the matter of punishment, it therefore follows that section 1739 prevails and takes precedence over the general provisions of sections 2750, 2751, supra.

My contention is that under this special statute the trial court was without jurisdiction to render judgment upon the verdict returned by the jury; in other words, I contend that under the instructions of the court to the jury advising them they must fix the punishment, and under the statute herein quoted, there was no legal verdict returned, and, when the court attempted to render judgment and impose the death penalty, it was without jurisdiction, and the attempted judgment was void, and this court was not warranted in modifying the judgment the trial court had rendered without jurisdiction, and that

the only power this court had was to reverse the case and send it back to the trial court for a new trial.

In Noel v. State, 17 Okla. Cr. 308, 188 Pac. 688, 690, this court said:

"The Penal Code (section 2319, Rev. Laws) requires the jury to fix the punishment for murder, and authorizes the penalty of death at the discretion of the jury; and, if they find the defendant guilty of murder, they must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor; this, in order that the defendant may not be sentenced to suffer death, except in the discretion of the jury, and when a plea of not guilty is entered to an indictment or information charging murder, the extreme penalty can be adjudged only upon the verdict of a jury fixing the punishment by death, 'but upon a plea of guilty the court shall determine the same.' Hopkins v. State, 9 Okla. Cr. 104, 130 Pac. 1101, Ann. Cas. 1915B, 736. The judgment in this case does not recite the fact that the defendant was convicted of murder by the verdict of a jury assessing the death penalty."

In the case of the People v. Hall, 199 Cal. 451, 249 Pac. 859, 861, the Supreme Court of the state of California, in construing a statute very similar to section 1739, says:

"The duty of the jury was thus made plain. Its discretion was to be exercised in the manner pointed out in the instructions and under section 190 of the Penal Code that discretion applied both to the fixing of the death penalty and the penalty of life imprisonment. The result of the exercise of that discretion must appear on the face of the verdict either by the use of specific words to express it, or, in the absence of such words, by necessary inference in the light of the instructions. It may, therefore, not rightly be said that, when the jury found the defendant guilty of murder in the first degree, but disagreed as to the penalty, it thereby fixed the death penalty. It

was the duty of the jury to exercise its discretion and fix the penalty. Failing to do so, no penalty was determined upon. The jury could not exercise its discretion and not exercise it in one and the same verdict. When a verdict, such as the one here under consideration, discloses on its face that such discretion was not exercised as to either penalty, it is not a verdict upon which the court is authorized to pronounce judgment of either death or life impris-. onment. In receiving such a verdict and in imposing the sentence of death upon the defendant, the court usurped the function of the jury, and its judgment was a nullity. The proceeding therefore resulted in a mistrial, and the judgment must be reversed. It is obvious, from what has been said, that the trial court should not have received the verdict in its present form, but should have caused the jury to return a verdict in conformity with law, or should have discharged the jury and retried the cause.

"It is earnestly insisted by the respondent that the defect in the form of the verdict constitutes no more than 'matter of procedure'; that under section 4½ of article 6 of the Constitution the judgment should not be reversed, for the reason that, upon an examination of the entire cause, including the evidence, the guilt of the defendant is shown, and that an affirmance of the judgment would not constitute a miscarriage of justice. We cannot agree that the defect in the verdict was merely an error in 'matter of procedure' as contemplated by said section 4½. On the contrary, the defect involved matter of substantial and substantive right. It was in effect the denial of a trial by jury. The amendment by which said section 4½ was added to the Constitution was not 'designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same Constitution or to overthrow all statutory rules of procedure and evidence in criminal cases.' People v. O'Bryan, 165 Cal. 55, 130 Pac. 1042; People v. Frey, 165 Cal. 140, 131 Pac. 127; People v. Wilson, 23 Cal. App. 513, 138 Pac. 971; People v. Ho Kim You, 24 Cal. App. 451, 141 Pac. 950.

"Trial by jury is guaranteed to every person charged

with a felony, and the denial of that right is in itself a miscarriage of justice. See Farrell v. City of Ontario, 39 Cal. App. 351, 178 Pac. 740. In view of the fact that the cause must be remanded for a new trial, we express no opinion as to the sufficiency of the evidence to sustain a verdict, but this much may properly be said, generally, that, however degraded and hardened a criminal the evidence may disclose an accused to be, he is entitled under the Constitution to trial by jury. In legal effect this right was denied to the defendant in the case at bar.

"The proceedings before the trial court amounted to the same as if the court had denied the defendant a trial by jury in the first instance, and, having heard the evidence and found the defendant guilty, proceeded to impose the judgment of death. Such a judgment may not stand even though there is the clearest proof of guilt."

My contention is, and I think it is borne out by the California case herein cited, that it was the duty of the jury to follow the law and the original instructions of the court and fix the penalty, and, when the jury failed to fix the penalty and returned the verdict that it did, it amounted to no verdict at all and should have been declared by the court a mistrial. The verdict returned by the jury discloses on its face that the direction given the jury by the statute was not obeyed as to the penalty; therefore it was not a verdict upon which the court was authorized to pronounce judgment of either death or life imprisonment. The court was without jurisdiction to impose any sentence upon the defendant, and when it attempted to do so it usurped the function of the jury and its judgment was a nullity. The trial court should not have received the verdict as returned by the jury, as it was in violation of the original instructions of the court and the statute under which the defendant was being tried. When the jury failed to return a verdict in con-

formity with the statute, the court should have discharged the jury and retried the cause.

This court, sitting as a court of review, should meet the questions as they arise and should insist upon the statute being complied with, and not attempt by equitable adjustment to say that the defendant was guilty or not guilty of a crime, unless he had been properly tried according to our statute. Whether guilty or innocent the defendant was entitled to a fair and impartial trial before an unbiased jury, and it was the duty of the jury after hearing the facts and the law, if it found the defendant guilty, to say by its verdict what degree of punishment should be meted out to the defendant. It matters not how degraded or hardened the evidence may show the defendant to be, he is entitled under the Constitution and statutes of this state to a trial by a jury, and, if the jury finds him guilty, the statute is mandatory that the jury must fix the punishment to be meted out to the defendant.

The Supreme Court of Tennessee, under a similar statute to the statute of this state, in the case of Mays v. State, 143 Tenn. 443, 226 S. W. 233, held that a judgment rendered on a verdict where the jury did not assess the punishment was a nullity.

The Attorney General in his brief, after citing authorities from California and Tennessee, closes his brief by saying:

"In view of the above authorities it will be seen that the trial court in assessing the death penalty in this case exceeded its power and authority."

I agree with the statement of the Attorney General and feel confident that under the statute of Oklahoma the trial court was without authority to impose the death penalty, or any other penalty on the defendant, and the

sentence and judgment was a nullity, and void, and this court should have remanded the case for a new trial. The court in its majority opinion disagree with the Oklahoma Criminal Court of Appeals, the California and Tennessee courts, and says:

"In this particular we think the California and Tennessee courts were in error."

In each of the cases quoted the jury found the defendant guilty of murder. In the majority opinion the court says that the holding of the California and Tennessee courts is narrow and technical, entirely out of line with modern jurisprudence to hold that such verdict is a nullity, and the failure of the jury to designate the punishment does not render the verdict entirely ineffective. This statement of the court overrides the specific language of section 1739, supra, which requires the jury to fix the punishment in a murder case. It was clearly the intention of the legislators when section 1739 was adopted to provide that, when a man was placed on trial for murder, the jury must fix the punishment to be imposed and not leave it to the trial court. The fixing of the punishment by the jury of one convicted of murder under our statute is mandatory, and is a part of the statute, and I contend that, where a verdict of guilty of murder is found, under our statute, and no punishment is imposed, that it is not such a verdict as would give the trial court jurisdiction to impose a sentence of death, or imprisonment for life.

Several states have murder divided into first and second degrees. Our statute provides for only one degree of murder; the punishment upon a conviction must be either death, or imprisonment for life. The court, in justification of its opinion, cites Simpson v. State, 56 Ark. 8, 19 S. W. 99, 102, as an authority for justifying its ac-

tion in affirming the decision of the trial court. When the Simpson Case was tried in Arkansas, section 1521, Mansfield's Digest, defined murder as follows:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree.

"Sec. 1522. All other murder shall be deemed murder in the second degree."

In the opinion of the court, in Simpson v. State, supra, the court said:

"The jury have found the prisoner guilty of murder, but, after finding a degree of murder which the proof does not warrant, the verdict stands for the offense of murder, but fails as to the degree. It is then as though the jury had found him guilty of murder, but failed to assess the punishment. The two degrees of murder are not distinct offenses. They are only statutory regulations of the punishment of the one offense of murder, to be inflicted according to the mental state in which the crime is committed."

It will be seen from the above quotation that the jury found a verdict of murder, but failed to designate the degree of the murder as provided by the Arkansas statute. The Arkansas court then proceeds to discuss the question of the different degrees of murder, which is not involved in the case, and then says: "The Attorney General, on behalf of the state, prefers a conviction for murder in the second degree to a reversal for a new trial."

I cannot agree with the majority opinion of this court that the Arkansas case is in point, or that there is any question of a verdict for murder. In my opinion the opinion of the court in this case will result in having penalties im-

posed upon parties who are convicted that are not warranted by the facts, or that the juries will shift the responsibility from their shoulders to the court, which in some instances, if not in all, may result in a punishment being imposed not commensurate with the crime committed. In this case the court heard the evidence and imposed the death penalty. The majority opinion, unlike the case relied upon to modify the judgment, does not question the sufficiency of the testimony to convict the defendant for murder with the penalty of death imposed, but only modifies the judgment because of the fact it held that modern jurisprudence warrants this court in doing so. In the Arkansas case the court found that the evidence was not sufficient to sustain the verdict of the jury of a conviction of murder in the first degree and gave this as a reason for its modifying the judgment from first-degree murder to second-degree murder.

I fully agree with the Attorney General in this case, and insist that the case should have been remanded for a new trial in accordance with the laws of our state. Courts do not favor court legislation, and especially is this true when a special statute is being construed.