[Crim. No. 1426.  In Bank.—March 16, 1908.]

## THE PEOPLE, Respondent, v. THOMAS J. HART, Appellant.

CRIMINAL LAW — TESTIMONY ON PRELIMINARY EXAMINATION — CROSS-EXAMINATION.—On a trial for grand larceny, proof of the fact that a witness for the prosecution had been sworn on the preliminary examination of the defendant is sufficient to raise the implication that he had testified thereon; and an objection to questions asked such witness on cross-examination in reference to his testimony there given, on the ground that they were "immaterial, irrelevant and incompetent," is insufficient to raise the special points that no sufficient predicate had been laid of the fact that the witness had testified on the preliminary examination, or that there should have been exhibited to the witness his testimony given thereon.

ID.—PRELIMINARY IMPEACHING QUESTIONS—TESTING CREDIBILITY, MEMORY, AND FAIRNESS OF WITNESS.—On such a trial, after a witness for the prosecution had testified to a certain conversation between the complaining witness and the defendant, questions asked him on his cross-examination, as to whether he had made such statements on the preliminary examination, and why he had not done so, and whether he had then told all he knew about the case, were merely preliminary for the purposes of impeachment, and should have been allowed, although a transcript of the witness's testimony was not first shown him.  Such questions were also admissible as testing the credibility, memory, and fairness of the witness.

APPEAL from a judgment of the Superior Court of Yuba County and from an order refusing a new trial.  Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

J. C. Thomas, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

LORIGAN, J.—The justices of the district court of appeal for the third appellate district having given their respective opinions in this cause and being unable to agree in a judgment therein, the matter is brought to this court for disposition.

The appellant, T. J. Hart, was jointly informed against with Evan Davis and James Flood for the crime of grand larceny. Davis, on his arraignment, pleaded guilty to the charge. What became of Flood the record does not disclose. The appellant was tried, convicted, and sentenced to four years' imprisonment in San Quentin, and from the judgment of conviction and the order denying his motion for a new trial, he appeals.

The evidence adduced at the trial of defendant Hart established that on October 7, 1906, the prosecuting witness Fred Dowane went from Wheatland to Marysville, reaching the latter city about dusk. He had with him about fifty-five dollars, consisting of two twenty-dollar pieces and some smaller gold and some silver coin. Immediately on reaching Marysville he went to Dempsey's saloon, which he had been accustomed to visit, and there met the defendant and Flood and proceeded to treat them and other persons in the barroom. After several drinks taken there, Dowane, together with the defendant and Flood, went to the Workingman's Saloon, where they were subsequently joined by Davis, and more drinks were indulged in. Dowane had no prior acquaintance with either the defendant or Flood or Davis. It would seem, however, from the testimony of Davis that he knew defendant before he joined the party in the Workingman's Saloon that night, but to what extent they were acquainted is not disclosed. When Davis went into the saloon, as he testified, "there was no introduction; went into the saloon by myself. Hart was there and said 'There is a live one; come up and have a drink.'" Dowane did the treating at the Workingman's Saloon, and while there exhibited his money. Leaving the Workingman's Saloon, the party consisting of Dowane, the defendant, Davis, and Flood, took in other saloons and together reached Gabriel's saloon, the

last one visited by them on their round. It was after they left this saloon that Dowane was robbed, and as to the occurrence he testified: "Was alone, they all came out of the saloon at the same time. Witness was alone with these three parties. Left the saloon in the company with the men witness went there with. One of the men was then in the courtroom, the defendant. Went out the front door of the saloon, or the corner, did not know which. Defendant was one of the men witness went out with. Turned to go uptown. There were three with the witness, defendant was one. Was grabbed from behind when maybe a couple of hundred yards from the saloon. The one who grabbed witness had his hand tied up. Hart, the defendant, was on the left side of witness at the time the man with his hand tied grabbed him. Was right up to witness, that is the defendant, Hart."

Q. "Do you know whether or not right at that time he touched your person?"

A. "Well, all he could have done perhaps was kind of to take hold of my pocket like this (showing). I remember that very well."

"At that time the little fellow, Davis, was on the right side of witness. Right up close to witness. The man who had his hand wrapped was the one who grabbed witness from behind. From the time he left Dempsey's saloon and Debau's saloon, the saloon on the corner, and the one near the levee, during all of that time did not know of it, if he was in company with any one but Hart, Flood and Davis. Had made associates with no one else."

Q. "Were you traveling with any one excepting the three named?"

A. "I was not."

It appeared from Dowane's testimony that Davis took the money from his pocket. He testified on cross-examination:

Q. "The defendant never made any effort to take any money from you, did he?"

A. "Never made any effort, no."

Q. "As a matter of fact he did not take any money from you, did he?"

A. "No."

Q. "You do not know whether or not he was in counsel with or advised or connived with anybody to take any money from you, do you?"

A. "Only from observation."

Q. "What did you observe that would make you believe that?"

A. "Well, it looked to me like that, when they were keeping company together and when I was robbed, this party went away with the others."

After being robbed Dowane went to a saloon known as Wall's, where the party had previously been in making their round that night. Hart and Davis were in the saloon drinking when Dowane came in. As to what occurred after Dowane came in, the barkeeper—Hall—who had been on duty all that evening, testified: "While they, Hart and Davis, were there he (Dowane) said he had been robbed, and looked in the crowd at the bar, and pointed to Hart and said he was one of the men. He said that is one of the men, and I want a policeman, if there is any around and I want one now. . . . Hart and Davis were about ten feet off when Dowane made the remark that Hart was one of the men who robbed him. . . . Hart said he had not seen Dowane, had not been with him."

On the cross-examination of Hall by counsel for the defendant, the witness was asked these questions, after stating that he had been sworn at the preliminary examination of the defendant:

Q. "You did not make this statement on the preliminary examination, did you?"

Q. "Why did you not make this statement on the preliminary examination?"

Q. "In your testimony on the preliminary examination did you then and there tell all you knew about the case?"

To each of the foregoing questions the court sustained an objection by the district attorney upon the ground that it was "immaterial, irrelevant and incompetent."

The bartender further testified that a few minutes after Dowane made the above statement indicating Hart as one of the parties who had robbed him and that he wanted a policeman, and Hart denied that he had been with or seen Dowane that night, Hart and Davis went away together, and after they had gone the witness telephoned for the police. An officer came in not long afterwards and Hart and Davis were arrested together somewhere on the streets of the city. The

officer found on Hart $1.60 and on Davis two twenty-dollar gold-pieces, two five-dollar gold-pieces, and some silver.

On behalf of the defense the only testimony offered was that of Davis and one witness who testified favorably to the reputation of the defendant for honesty. Davis testified that he took the money from Dowane; that there was no previous understanding with Hart or Flood, or either of them, of any character, that Dowane should be robbed; that at the time the money was taken by him from Dowane, the latter had it in his hand and was apparently about to put it in his pocket; that he (Davis) was standing by his side and grabbed him by the arm, wrenched the money out of his hand and went across the street; that he took it on the impulse of the moment and could have done so without the other two knowing anything about it; that Hart was four or five feet away when he took it and he could easily have taken it away without either knowing whether he had taken it or not; that Hart followed him after he went across the street and together they went into a saloon; that after he took the money nothing was ever said about it; nothing as to any division of it being made.

We have stated all the material evidence in the case so that the main point upon which the claim for a reversal is based may the better be understood. This is that the court erred in sustaining the objections of the prosecution to the questions asked by the defense of the barkeeper Hall as to whether he had at the preliminary examination as he then did on the trial, made the statement concerning what took place in the saloon after the robbery while Dowane, Davis, and Hart were there.

It is insisted by the People that the rulings were proper because it did not appear, 1. That the witness had testified upon any preliminary examination; 2. That the attorney for defendant had not offered to exhibit to the witness any transcript of his testimony taken at the preliminary examination, and, thirdly, that in any event the ruling was not prejudicial to the defendant.

The only claim of the People is that the defense had not laid the proper predicate or adopted the proper form to authorize the questions. But, there is clearly no merit in this claim, particularly under the general objections which were interposed. While it is insisted by the prosecution

that it was not shown that the witness had testified at the preliminary examination, this claim is not strictly true. The witness answered to a previous inquiry on that subject that he had "been sworn on the preliminary examination." While it is true that this was not proving with legal exactness that he then *testified*, still it was a statement from which it was to be implied that he had done so, and was sufficient proof of it to require upon the part of the prosecution more specific objection to the inquiries which were being made on the theory that there was such proof, than that the questions that were asked were "immaterial, irrelevant and incompetent." Proof of the fact that he had been *sworn* was sufficient to raise the implication that he had *testified* and if it was really intended under the general objection interposed by the People to the subsequent inquiries of counsel for defendant to make the special point that no sufficient predicate had been laid because it was directly proven that the witness had testified on the preliminary examination or that there should have been exhibited to the witness his testimony given at the preliminary examination, it was the duty of the district attorney to have made these specific objections in order to afford the attorney for the defendant an opportunity to obviate them and have the witness answer the questions which were pertinent and otherwise unobjectionable.

As to the further argument of the prosecution that the questions were impeaching questions and therefore that a transcript of the witness's testimony should have first been shown him, it is sufficient to say that these questions were not by way of direct impeachment. In the first place they were but preliminary in their nature, and had answers been allowed, the explanations of the witness might have been full, complete, and satisfactory. He might, for example, have said that he did so testify on preliminary examination, or he might have answered that he was not interrogated upon the subject at all. Only as he answered, and depending upon the character of his answers, would questions by way of direct impeachment have followed. As it was, in sustaining the objection to these questions, the court cut off the right of defendant's counsel to proceed along a legitimate line of cross-examination, while, in ad-

dition to this, the questions in and of themselves were pertinent, proper, and valuable cross-examination as testing the credibility, memory, and fairness of the witness. (*People* v. *Manasse, ante,* p. 10, [94 Pac. 92].)

No other point urged as error seems to call for specific consideration, but for the reasons above given the judgment and order are reversed and the cause remanded for a new trial.

Henshaw, J., McFarland, J., and Beatty, C. J., concurred.