PEOPLE, PLAINTIFF AND APPELLEE, *v.* BARRIOS, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in a Prosecution for Voluntary Manslaughter.

No. 896.—Decided May 12, 1916.

VOLUNTARY MANSLAUGHTER — PLEADING — INFORMATION — AMENDMENT — SPEEDY TRIAL — DISMISSAL OF INFORMATION. — An information charging voluntary

manslaughter was filed within the time prescribed by section 448 of the Code of Criminal Procedure. On motion to amend made on the day set for the trial that information was dismissed and a new one filed. On the same day a motion to dismiss under said section was overruled and the case went to trial without further objection by the defendant. *Held:* That as the defendant was not held to answer for the crime for sixty days after leave to amend, the said section is not applicable; that the way to amend a pleading is by filing a new one, and there is no reason why an information should be excluded from this rule; that on the theory that the amended information was an entirely new one, the object of the said section was accomplished by the dismissal of the original one; that according to section 452 of the said code, the dismissal of the first information was no bar to the filing of the second.

ID.—EVIDENCE—DYING DECLARATION—RES GESTÆ—WEIGHT OF PROOF—REBUTTAL—ANTICIPATION OF DEFENSE.—A dying declaration is part of the *res gestæ* and should not be excluded merely because there is other direct evidence. Objection that the dying man could not have been of perfectly sound mind because there was testimony as to his feeble condition, goes to the weight of the proof and rests with the trial court. Objection that the dying declaration contained matter of rebuttal in anticipation of the defense, goes to its credibility and rests with the jury.

ID.—ID.—THREAT—SELF-DEFENSE—REBUTTAL—CHARACTER OF VICTIM.—A threat made by the victim against the defendant, but of which the latter had no knowledge, could have aroused no fear in him to support a plea of self-defense. Evidence in rebuttal may be admitted to show the good character of the victim after it had been attacked.

ID.—ID.—INSTRUCTIONS—LAW OF FLIGHT—SELF-DEFENSE.—Instruction that a man on a highway is bound to flee from an aggressor if he can do so in safety is error. A man is not justified in seeking a quarrel, but when attacked at a place where he has a right to be, in a way that puts his life in imminent danger, he may stand his ground and take the life of the assailant if reasonably necessary.

ID.—INSTRUCTIONS—EXCEPTION—APPEAL.—The fact that the instructions as given were not excepted to and the court refused additional instructions because its rule required that the written instructions should be presented before the charge was begun, does not prevent this court from reviewing the instructions as given in order to ascertain whether any fundamental error was committed.

The facts are stated in the opinion.

*Messrs. Angel A. Vázquez* and *José de Diego* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

An information in the District Court of Mayagüez charged Rogelio Barrios with voluntary manslaughter, of which he was convicted. Error is assigned because the court did not

dismiss the prosecution under section 448 of the Code of Criminal Procedure providing for such dismissal on failure to file an information within sixty days from the time a person is held to answer a public offense. An original information, it is conceded, was filed in time. The case was set for May 4, 1915. On that day the district attorney came into court and asked leave to file an amended complaint to charge correctly the date of the offense. The motion was granted, the information was dismissed and the bond given by the defendant canceled. Immediately thereafter a new information was presented curing the defect and amending in other minor particulars. The defendant then made a motion to dismiss on the ground specified. The court overruled the motion and the case went to trial the same day. No delay was asked by the defendant and no complaint was made in the court below or raised here on the ground of surprise or unreadiness for the trial by reason of the amendment.

The object of section 448 is to secure a defendant a speedy notice and trial of his case. The defendant was not delayed at all by the action of the court in permitting the amendment. The original information was presented in time. If the defendant had been held to answer for the crime for sixty days after leave granted to amend, section 448 might come into play, but generally that section does not apply to an amended information. The court would have some discretion. As more or less germane to this point we refer to *The People* v. *Rivera,* 9 P. R. R. 454; *Ex parte Arroyo,* 15 P. R. R. 119; *The People* v. *Ayala,* 19 P. R. R. 888.

At the hearing appellant insisted that instead of amending the Government presented an entirely new information, and hence that the second or real information was not presented within sixty days of the arrest. The way to amend a pleading is generally by filing a new one, and there is no reason why informations should be excluded from this practice. On the theory that the information presented was entirely a new one, it appears that the first information was

actually dismissed and filed away, and the very object of section 448 was accomplished. The filing of the new information found the defendant immediately ready to proceed to trial, the dismissal of the first information being, according to section 452 of the Code of Criminal Procedure, no bar to the filing of the second one.

The second assignment of error relates to the admission of a dying declaration. The appellant in his brief seems to rely principally on the fact that there was other proof tending to show the same matters set up in the said declaration. The court has some discretion in the admission of cumulative evidence, but a dying declaration should never be excluded merely because there is other direct evidence. The necessity for such declarations to which the decisions refer, relates to the fact that evidence of the particular person, the dying man, is not otherwise obtainable and does not depend on whether other witnesses may give the same testimony or a part thereof. *People* v. *Fong Ah Sing,* 64 Cal. 253, 21 Pac. 233; 21 Cyc. 975. A dying declaration is part of the *res gestae* in regard to the admission of evidence and governed by similar principles.

Another objection to the dying declaration was that the dying man could not have been in perfectly sound mind, as he declares, because several witnesses testify to his feeble state. But there was no proof that he was not clear-headed and sound in mind. And this form of objection goes to the weight of the proof which was enough to prevent us from disturbing, on this ground, the action of the court in admitting the declaration.

Another attack was made on the dying declaration inasmuch as it contained matter of rebuttal. It recited that four or five witnesses were not present at the time of the attack. The dying man was anticipating that these men would be brought to aid the case of the defendant. We do not know how the dying man knew that these witnesses would be brought to testify although they seem to have been con-

nected with the events leading to the homicide. Perhaps he was answering questions. His statement might even be false. That was a matter for the jury. The objection really goes to the credibility of the dying declaration and not to the action of the court in admitting it. The foregoing were the principal objections urged at the hearing, but we shall discuss others raised in the brief.

A statement of a witness tended to show that Padilla, the slain man, had a strong animosity against Barrios and that he had said that if Barrios was found dead it would be at the hands of Padilla. But the witness denied ever having communicated this threat to Barrios. Self-defense was the defendant's plea and it was evident that if defendant had no knowledge of this threat it could not have aroused a reasonable fear in him. The matter is elaborately discussed in the case of *The People* v. *Sutton,* 17 P. R. R. 327, the majority opinion and the dissenting opinion of Mr. Justice MacLeary agreeing on this point.

The court did not err in refusing to strike out evidence in rebuttal tending to show the good character of Padilla, presented after an attack on the character of the dead man.

The next error assigned is that the verdict of the jury is against the proof. We shall not discuss this error at greater length than to say that if no other error had been alleged there was proof tending to show that in a combat the defendant slew another man and that from the evidence the jury had a right to say that he did not do it in self-defense, as maintained by the appellant.

There are various assignments with regard to the instructions. With one exception we find no error. The court properly stated the law with regard to homicide in general and the rules governing in self-defense, but it erred when it said that a man on the highway was bound to flee from an aggressor if he could do so in safety. The court said: "If a person is attacked in his own house, in that case, according to the law, a person attacked or assaulted is under no obligation

to withdraw, to fly, or to avoid the encounter, but such a person may stand his ground and defend his house against a violent attack of another person, and, if it is necessary, kill the aggressor. But such is not the fact in a public road, in a highway of Porto Rico. In such case it is the duty of the person to avoid the necessity of killing and if he can avoid such necessity by retiring, going away, fleeing from his aggressor, it is his duty to do so.'' The court also told the jury that no man was bound to retire if he ran the risk of death or bodily injury thereby.

Section 209 of the Penal Code provides that homicide is also justifiable when committed by any person in any of the following cases:

"1. *  *  *.

"2. *  *  *.

"3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed."

Interpreting an equivalent section, the Supreme Court of California, which we generally follow in criminal matters, said that, of course, a man was not justified in seeking a quarrel; but when a man, without fault himself, was suddenly attacked in a way that put his life or safety in imminent hazard, he was not compelled to fly or to consider the proposition of flying, but might stand his ground and defend himself to the extent of taking the life of the assailant if that was reasonably necessary. *People* v. *Newcomer,* 118 Cal. 273. The court cites the decisions in *People* v. *Lewis,* 117 Cal. 186; *People* v. *Hecker,* 109 Cal. 467, and the decision of the Supreme Court of the United States in *Beard* v. *United States,* 158 U. S. 550.

"So that while the killing must still be under absolute necessity, actual or apparent, as a matter of law that absolute necessity is deemed to exist when an innocent person is placed in such sudden jeopardy. The right to stand one's ground should form an element of the instructions upon the necessity of killing and the law of self-defense."

In a number of the California cases the defendant was in his own house or on his own ground, but the language of the court applies to the more general case of when a man is in a place where he has a right to be. In *People* v. *Maughs,* 149 Cal. 253, the defendant was an employee and the person killed was in his own house, and the court held that the defendant was under no obligation of flying. Commenting on this case the District Court of Appeals of the First District of California in *People* v. *Webber,* 147 Pac. 102, pointed out that in the Maughs case the man who was killed was in his own house and the defendant was an employee, and hence that it followed that no matter where a person may be, if he has a right to be there and is wrongfully attacked, he may stand his ground and in necessary self-defense slay the assailant where as a reasonable man he is in danger of losing his life or suffering great bodily injury at the hands of his assailant. And the court cites other cases.

Something like the instruction given by the court was the doctrine of the common law, at least as interpreted in some jurisdictions, but the rule has been differently construed in other states. The whole subject is reviewed in a note to *State* v. *Gardener* (Minn.), 2 L. R. A. (N. S.) 49.

Our code has been taken from California, the language of section 209 is general and we see no reason to put the construction upon it that has been ascribed to the common law. On the contrary, if a man is in the right he may stand his ground. Of course, he must be in the right. He may not deliberately seek a spot to provoke his adversary or deliberately wait for him.

There was evidence in this case tending to show that the

defendant while proceeding along the *carretera* had to pass by Padilla, the man who was slain; that the defendant was on horseback, on a mare; that the mare was tired; that the defendant realized that Padilla was about to overtake him with a *machete* and that the *machete* was being used in a menacing manner; that he, the defendant, shot behind him to ward off the attack, the defendant says without intention of taking the life of Padilla. We express no opinion as to the credibility of these statements, but there was proof tending to support the defendant not only from other witnesses of his own, but also from Government witnesses, and the dying declaration of Padilla admitted the possession of the *machete*.

There was no exception to the instruction of the court as given. At the conclusion of the instructions the defendant offered a number of written instructions which included an instruction as to the law of flight. The court refused these instructions solely on the ground that the rule of court required that the written instructions should be presented before the court began its charge to the jury, this being the practice required by the rule of court. This fact does not prevent us from reviewing the instructions given without exception to see whether any fundamental error has been committed by the court below. *The People* v. *Lebrón, ante* page 611 (decided March 29, 1916). This power, although exercised with caution, is given us by the law of May 30, 1904.

As there was proof in this case tending to show that the defendant was in a place where he had a right to be and where his defense was solely on the ground of protecting himself from a sudden assault, his case was submitted to the jury without a proper instruction or with an erroneous instruction in regard to his duty to flee. There was a mass of conflicting evidence and we are unable to conclude therefrom that the question of the necessity of flight was not an important one for the jury to consider.

We deem the error a fundamental one, and, therefore, the judgment must be reversed and the case sent back for a new trial.

*Reversed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.