[Crim. No. 852. First Appellate District, Division One.—August 27, 1919.]

## THE PEOPLE, Respondent, v. A. W. WILLIAMS, Appellant.

[1] CRIMINAL LAW—ORDER DENYING MOTION IN ARREST OF JUDGMENT—APPEAL.—An appeal does not lie from an order denying a motion in arrest of judgment.

[2] ID.—LARCENY — IMPEACHMENT OF COMPLAINING WITNESS — CONFLICTING STATEMENTS—PROPER QUESTION.—In a prosecution for the crime of larceny, the complaining witness, on direct examination, having testified that when the defendant returned to the room in question he asked the defendant to switch on the light, and on cross-examination having been asked if it was not a fact that when the defendant entered the room he switched on the light without being asked by the witness so to do, and the

latter having answered in the negative, he was then properly asked, "Did you state at the preliminary that you asked him to turn on the light?"

[3] Id.—Previous Inconsistent Statements by Complaining Witness—Cross-examination—Impeachment—Foundation Unnecessary.—In a prosecution for the crime of larceny, the complaining witness having testified on cross-examination that he made no effort to hold the defendant a prisoner in his room after the discovery of the theft, it was proper to ascertain whether or not the witness had made previous inconsistent statements, not only upon that subject, but also relative to the events that occurred in his room and partially detailed upon his direct examination. And it was proper to endeavor to discover that fact from the witness himself, without the necessity of first laying the predicate referred to in section 2052 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. J. Rogers and F. M. Fulstone for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, and R. L. Chamberlain for Respondent.

BARDIN, J., pro tem.—The defendant was informed against for the crime of grand larceny. Upon his trial he was convicted of petit larceny and, having suffered a previous conviction of felony, which he confessed on arraignment, was sentenced to imprisonment in the state prison at San Quentin. He now appeals from the judgment of conviction and an order denying his motion for a new trial, and also from an order denying his motion in arrest of judgment.

[1] It will be unnecessary to comment further upon the attempted appeal from the order denying defendant's motion in arrest of judgment than to say that there is no authority for such appeal. (People v. Matuszewski, 138 Cal. 533, [71 Pac. 701]; People v. Mullen, 7 Cal. App. 547, [94 Pac. 867].)

No claim is made by the defendant that the verdict of the jury is not supported by the evidence, the grounds urged for the reversal of the judgment and order denying a new trial

being that the trial court erred in its rulings upon the admissibility of evidence upon three separate occasions, thereby committing error of such substantial weight as to entitle the defendant to a reversal of the judgment rendered against him, and to have this cause remanded for a new trial.

The information alleges that the crime was committed on or about January 2, 1919. The errors complained of arose during the cross-examination of the complaining witness, Walker, who testified substantially as follows: That he became acquainted with the defendant about the middle of December, 1918, while both were in the employ of Wells-Fargo & Co. at Fresno, California. That about the first day of January, 1919, Walker stated to the defendant that he was making arrangements to go to Texas and intended going to the bank to withdraw some money. That shortly prior to the alleged theft defendant heard a third party state to Walker that he would pay him some money the following day, and that on January 2d, the day of the commission of the offense, the defendant inquired whether this money had been paid, to which inquiry, however, the prosecuting witness answered in the negative. Walker further testified that on the afternoon and evening of January 2d, the prosecuting witness and the defendant drank intoxicating liquors together, but were not intoxicated, and that night went to Walker's room in the Clark hotel to pass the night, although at that time the defendant had lodgings at another hotel.

The testimony of Walker further shows that shortly after reaching the latter's room they retired for the night, both occupying the same bed; that when Walker disrobed he felt in his trousers pocket and ascertained that his pocketbook was there, folded his trousers, and left them on a suitcase near the head of his bed. At 5 o'clock that afternoon his pocketbook contained a fifty dollar Liberty bond, a twenty dollar bill, and a five dollar bill in currency of the United States, after which time its contents had not been disturbed.

Before retiring Walker locked the door of the bedroom, placed the key on the table, directing the defendant's attention to the fact should he desire to go to the lavatory. Walker was awakened at five minutes to 2 o'clock A. M. of that night by the defendant unlocking the door from

outside of the room. Williams stepped inside the room and stated that he had been to the toilet, which was but two or three doors away and in the same hallway. He was fully dressed at the time. Walker then noticed that his trousers had been disarranged and had been moved from the suitcase, and he thereupon discovered that his pocketbook and its contents were gone.

Walker further testified that he and the defendant remained in the room during the balance of the night, the defendant undressing and again retiring, while he, Walker, did not again retire. Shortly before 7 o'clock of the morning of January 3d, one Keith, a fellow-roomer at the Clark hotel, came to Walker's room and was informed of the larceny of Walker's property. Keith stated to Williams that he had seen him down on H Street a little after 12 o'clock, which Williams then admitted was true.

[2] It was testified by Walker, on direct examination, that when the defendant returned to the room about 2 o'clock A. M., under the circumstances already related, he was asked by Walker to switch on the light. On cross-examination the question was asked if it was not the fact that when the defendant entered the room at the time referred to he switched on the light without being asked by the witness so to do, to which question the witness answered in the negative. This question then followed: "Did you state at the preliminary that you asked him to turn on the light?" The district attorney objected to the question as immaterial. The question was a proper one and the objection should have been overruled. (*People* v. *Hart,* 153 Cal. 261, [94 Pac. 1042]; *People* v. *Webber,* 26 Cal. App. 413, [147 Pac. 102].) And it must be assumed that such ruling would have immediately followed had not counsel for the defendant been apparently diverted from his purpose of making the above inquiry, for, instead of taking the ruling of the court upon the objection, he asked another and different question of the witness before the court had ruled upon the objection, thus in effect withdrawing the previous question.

During the direct examination of the prosecuting witness this testimony was given:

"Q. Was there anything said about where he would stay all night that night? (Referring to the night in question.)

"A. Oh, I told him that—he had stayed there the night before—I told him, I says: 'I can't keep you over to-night; I says, 'I'm going to have company.' "

Referring to this testimony, counsel for the defendant, on cross-examination, propounded the question which follows, which question was objected to as immaterial and the objection properly sustained:

"Now, just tell us who that party was and give us an opportunity to subpoena them right now."

The truth or falsity of that statement would shed no light upon the issues before the court. In fact, if the statement was a pure fabrication, then it would seem to militate more against the defendant than be of benefit to him, for it would, to some extent, demonstrate the desire in the prosecuting witness' mind to rid himself of the company of the defendant.

We pass now to the consideration of the last objection complained of. This objection is predicated upon the court's refusal to permit the prosecuting witness to answer another of the questions directed to the prosecuting witness on cross-examination. That witness had testified that he had made no effort to make the defendant a prisoner in his room prior to the arrival of the peace officers. These proceedings then took place:

"Q. Is it not a fact that you told Mr. Beebe, the proprietor of the Mayer Hotel, where Mr. Williams stopped, a few days after the 2d, that you found this man in your room and that you held him at the end of a gun in the corner of the room until the police came?

"Mr. Beaumont: Well, we object to that as irrelevant, incompetent, and immaterial and not proper cross-examination, and an attempt to impeach the witness on a collateral and immaterial matter; and that the question is not properly founded for impeachment.

"The Court: The objection is sustained. I think it is immaterial.

"Mr. Rogers: If we call Mr. Beebe, will we be prevented from asking whether or not Mr. Walker made this statement to him, that he found him in the room and held him at the end of a gun until the police came?

"The Court: The chances are you will, if it is objected to."

Mr. Beebe was subsequently called as a witness for the defendant and testified that the statement above referred to was in fact made by the prosecuting witness, but his testimony was, upon motion of the district attorney, stricken from the record, although the jury was not admonished to disregard it.

[3] The record discloses that during the direct examination of the prosecuting witness he went into a detailed account of what happened in his room from the time the defendant returned there until morning, and during which time the defendant and the prosecuting witness were together alone. It was proper to make full inquiry upon cross-examination as to any facts which had been referred to in the direct examination. (Code Civ. Proc., sec. 2048.) And, having testified on cross-examination that he made no effort to hold the defendant a prisoner under the circumstances referred to, it was proper to ascertain whether or not the witness had made previous inconsistent statements, not only upon that subject, but also relative to the events that occurred in the room and partially detailed upon his direct examination. And it was proper to endeavor to discover that fact from the witness himself, and without the necessity of first laying the predicate referred to in section 2052 of the Code of Civil Procedure. (*People* v. *Jones,* 160 Cal. 358, [117 Pac. 176]; *People* v. *Ho Kim You,* 24 Cal. App. 451, [141 Pac. 950]; *People* v. *Webber,* 26 Cal. App. 413, [147 Pac. 102]; Wigmore on Evidence, sec. 1023.)

The court did not commit error in striking out the testimony of Mr. Beebe, the witness called for impeachment. It was received over the objection of the district attorney and was not properly founded for impeachment as required by section 2052 of the Code of Civil Procedure. But the trial court was in error in sustaining the objection of the district attorney to the question directed to the complaining witness relative to the alleged contradictory statement made to Mr. Beebe. The utmost latitude compatible with our rules of evidence should have been permitted in the cross-examination of that witness. The record shows other instances where the cross-examination was held within boundaries more restricted than is usual under circumstances where the guilt of the defendant depends to a considerable

extent, not only upon indirect evidence, but also upon the credibility of a single witness.

A survey of the whole record of the case, however, which discloses ample testimony to warrant the conviction of the defendant, compels the conclusion that the error complained of has not resulted in a miscarriage of justice. The case seems to be one for the application of section 4½ of article VI of the constitution of this state. It appears from the record that the defendant had been unduly inquisitive about the receipt of money by the complaining witness shortly before the commission of the offense. On the night of January 2d he had pressed himself into companionship with Walker for the night, although he had lodgings at another hotel. Without arousing Walker from his slumber the defendant stealthily arose at about midnight, fully dressed himself, and went down upon the streets of Fresno, and was observed by two witnesses in front of the hotel where he had permanent lodgings. He returned to the room of the prosecuting witness, unlocked the door from the outside, entered, locked the door again, and stated to Walker that he had been to the toilet. Subsequently, and in the presence of the officers, he admitted having made this false statement to Walker. Confronted with a witness who had seen him down on the street, he offered in explanation of such act that he had gone from Walker's room down upon the street to get a drink. He denied having any money in his possession other than fifteen dollars in currency and a few dollars in silver. It was only after a very careful search that a twenty dollar bill in currency was found concealed on the inside of his hatband. The Liberty bond was not found.

The defendant did not take the stand, but sought to prove by other witnesses that Walker had been imbibing intoxicating liquors quite freely on the afternoon and evening in question and that he had been consorting with a woman of questionable morals, and that he might have lost his money through her handiwork, rather than by any act of the defendant. The testimony intended to sustain such a theory, while redolent of days before the advent of the Red-light Abatement Act and of war-time prohibition, is weak and unconvincing, and in our estimate is entitled to

no more weight than that given it by the jury and trial court.

The defendant's conduct, his admissions, his highly incriminatory deceptions, coupled with the testimony of the witnesses for the prosecution, justify the conclusion reached by the jury, and make this a proper place to apply the section of the constitution referred to.

The judgment and order denying a new trial are affirmed.

Richards, J., and Waste, P. J., concurred.