[Crim. No. 4252.   Second Dist., Div. One.   Nov. 5, 1948.]

THE PEOPLE, Respondent, v. EARL ORMES, Appellant.

Richard A. Haley for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

YORK, P. J.—Defendant Ormes was charged in an information with the crime of perjury, in that on December 18, 1945, after being properly sworn, he testified in behalf of one John D. Wade, who was then on trial for the crime of burglary, and that he "did then and there willfully, knowingly, corruptly, falsely and feloniously and contrary to said oath, swear, take oath, say and give in evidence certain evidence that he then and there knew to be false, and upon and about matters which were then and there material to the case on trial, being testimony in regard to persons present at a crap game in the City of Wilmington, and that one Jack Arnold was present at said crap game, and that said Jack Arnold presented said $50 check in said crap game"; further, that defendant's testimony was material to the issues in the trial of said John D. Wade "in that said testimony tended to show, and did show, an alibi for and on behalf of the said John D. Wade. That in truth and in fact, as he the said Earl Ormes then and there well knew, all of said testimony and statements and things so given, sworn to and stated by the said Earl Ormes in the evidence as aforesaid were then and there false and untrue, and he, . . . did then and there, as aforesaid, feloniously, willfully, knowingly and corruptly swear falsely and commit perjury."

The jury found defendant guilty, as charged. Thereafter defendant's motion for a new trial was denied, proceedings were suspended on April 30, 1948, and defendant was placed on probation for three years on condition that he pay a $250 fine through the probation officer and obey all laws and the probation officer.

Thereafter, defendant filed his notice of appeal from "the verdict and judgment . . . and also from the order denying defendant's motion for a new trial."

Since there is no appeal from a verdict, and no judgment was ever entered herein, the attempted appeals from the verdict and judgment must be dismissed. (Pen. Code, § 1237.)

Since section 126 of the Penal Code provides only imprisonment as punishment for perjury, and the case of *People* v. *Kuhlman,* 86 Cal.App.2d 566 [195 P.2d 53, 196 P.2d 80], holds that, under sections 672 and 1203.1 of the Penal Code, where the punishment provided for the crime is

imprisonment only, the maximum fine which may be imposed as a condition of probation is the sum of $200,——the order fixing the terms of defendant's probation should be modified by reducing the fine to be paid by him to the sum of $200.

By stipulation of counsel, it was agreed that Frank Gordillo and John D. Wade were tried and convicted in December, 1945, for the crime of burglary; that appellant Ormes, after being properly sworn, testified on behalf of said Wade and Gordillo; that a certain check drawn in the sum of $50 was deposited by and credited to the account of Gordillo. It was further stipulated that appellant's testimony given at the Wade-Gordillo trial might be read in the instant trial.

The check in question shows by perforations that it was deposited on August 22, 1945, and a clearing house stamp marked upon it bore the date of August 23. The check was dated August 19, 1945, which was a Sunday, and was made payable to the order of cash in the sum of $50 by one Maurine Questad. On the night of August 19th it was presented by the maker and cashed by one Leroy Nash, a bartender, employed at the Track Café in Pasadena. After the close of business that night, Nash placed said check in a money sack which he turned over to the manager of the café, Mr. Francis J. Gagnon, who hid the sack in the café before he left that evening. On August 20, 1945, the Track Café was burglarized, and on September 3 or 4, 1945, a money sack, which was identified as one set up "for the handling of the money out of one of the cash drawers" of the Track Café, was found in the home of John D. Wade, one of the persons above referred to as having been convicted of burglary.

Appellant herein was called as a witness in behalf of John D. Wade during the burglary trial. His testimony therein, which was read into the record at the instant trial, showed that he had known Wade for a period of five years and had been employed by Wade; that appellant also knew one Jack Arnold, recalling that the first time he remembered seeing him was in a crap game at Terminal Island, during the lunch hour, at approximately 12:05 or 12:10 p. m., on a day in the latter part of August, 1945; that appellant, Gordillo and Arnold were among the 10 or 12 persons playing the game; that Wade was there but was not in the game; that the Jack Arnold referred to was a part owner of the Track Café; that a check for $50 identified as the same check which was given to Leroy Nash on August 19th, was introduced into the crap game; that Gordillo said, "Arnold, is that check any good?"

to which the latter replied: "Well, of course, it is good. I know it is good." That later, when appellant had acquired an interest in the check, Arnold repeated: "It is good. I stand back of it." That at the end of the game, Gordillo was in possession of the check.

On cross-examination in the burglary trial, appellant testified that he did not know who first introduced the check into the game; that Arnold won a sum of money in the game; that such crap games were an almost daily occurrence; that checks did not appear frequently in crap games; that he did not know who wrote this particular check, did not know its date and did not examine it.

Mr. Jack Arnold testified that he was not in Wilmington on August 20, 1945, between the hours of 11 a. m. and 1 p. m.; that he did not take part in a crap game in Wilmington on that particular day; that he did not see appellant or the check in question on that day; that in fact he did not see the check until the burglary trial in December, 1945, several months after the date of the alleged crap game.

Miss Amelia Hammack, who was employed as bookkeeper and secretary at the Track Café, testified that she had lunch with Mr. Arnold at the café in Pasadena on August 20, 1945, and that she saw him around the café from 10 a. m. until about 5 p. m., when she finished work for the day.

On cross-examination of Mr. Arnold, the following took place:

"By Mr. Haley: Q. You still own the Track Café, Mr. Arnold?

"Mr. Galliano: Objected to as immaterial.

"The Court: Sustained, and not proper cross-examination as well.

"Mr. Haley: Q. Now, you were a friend and acquaintance of John Wade before this burglary, weren't you?

"A. I knew him, yes. Q. Well, you used to work with him. You had a business with him, didn't you? A. Yes, I did. Q. You also were a friend of Gordillo's, weren't you? A. Well, I wasn't a friend. I knew him. Q. Well, you worked with him, didn't you? A. No, I was employed by the same concern. Q. Yes, Western Pipe and Steel, is that correct? A. Yes. Q. And Gordillo worked there with you? A. Yes.

"Q. You were also acquainted with Rose and Rose's Café on 133d and Broadway?

"Mr. Galliano: Objected to as immaterial and not proper cross-examination.

"The Court: Sustained.

"Mr. Haley: May counsel approach the bench?

"The Court: Yes, sir. (The following discussion took place between the court and counsel out of the hearing of the jury.)

"Mr. Haley: I want to show, if the Court please, a background of gambling activity to prove and show the basis for the fact that this man was in the crap game at Wilmington on the day we are speaking of.

"The Court: All right, but that won't prove it.

"Mr. Haley: That is our offer of proof, if the Court please.

"The Court: How do you connect Rose's Café up with it?

"Mr. Haley: Rose's Café is one of the places they gamble. There is another place I have in my notes. All of these boys gambled all these years from 1942 right down to the present day. That is my line of defense, the line of questions I wanted to ask, and it is proof I wanted to offer.

"The Court: The objection will be sustained. (Counsel resume their places at counsel table and the following proceedings were before the jury.)

"Mr. Haley: Q. Where do you live now, Mr. Arnold?

"A. At the moment I am staying at the Villa Riviera in Long Beach. Q. Now, then, you have spent a good deal of time around Wilmington, California, haven't you?

"Mr. Galliano: Objected to as immaterial.

"The Court: Sustained. We are only concerned with whether or not he was there on that particular day.

"Mr. Haley: Well, if the Court please, these are preliminary to that question.

"The Court: The objection is sustained.

"Mr. Haley: Q. Now, then, at or about the 20th day of August, or thereabouts, you did indulge in gambling games, did you not, Mr. Arnold?

"A. I don't quite understand the question.

"Q. On the 20th day of August—was it 1945, counsel?

"Mr. Galliano: Yes.

"Mr. Haley: Q. On the 20th day of August, 1945, at or about that time, did you engage in gambling games?

"Mr. Galliano: I think that is immaterial, if the Court please.

"The Court: Sustained.

"Mr. Galliano: And vague and indefinite.

"Mr. Haley: Q. Well, on or about the 20th day of August, 1945, did you engage in a poker game with Tommy Morgan and Mr. Brown?

"Mr. Galliano: Objected to as immaterial.

"The Court: Sustained.

"Mr. Haley: No further questions.

"Mr. Galliano: All right, will you step down, please, Mr. Arnold?

Appellant took the stand in his own defense and acknowledged that the testimony read into the record from the previous trial was his testimony and stated that it was true and honest to the best of his knowledge and belief. On cross-examination, he denied he had conferred with Gordillo and Wade with respect to the testimony he would give at their trial, except that they asked him if he remembered the crap game and the check incident, and he told them that he did. In answer to the question: "As a matter of fact, you did not see Mr. Arnold in Wilmington on the 20th day of August of 1945, did you?" this witness stated: "I don't know the exact date. He was there the day I testified to this particular crap game. I don't recall the date."

█ Appellant here urges that the evidence is insufficient to justify the verdict, because of lack of sufficient corroboration and failure to show that the defendant knowingly testified falsely; also that the court erred in its decisions on matters of law arising during the course of the trial.

The check in question was made and cashed at the Track Café on the 19th of August, 1945; the café was robbed on the 20th, and the check was deposited on the 22d by Gordillo, who was later convicted of burglarizing the café. These facts raise the inference that the check was stolen from the café, and the conviction of Wade and Gordillo further establishes that the check was stolen by them.

Appellant placed the crap game, in which the check made its appearance, at Wilmington during the lunch hour of a day in the "latter part of August, 1945." However, the prosecution in questioning the witnesses Arnold and Hammack confined itself with what occurred on August 20, 1945. In fact, except for the statement of Arnold that he never saw the check until the burglary trial in December, 1945, the only material evidence produced by the prosecution was the testimony of Arnold that he was not in Wilmington on August 20, 1945, together with the testimony of Miss Hammack that she had lunch with him on that day and saw him at the Track Café in Pasadena from 10 a. m. until 5 p. m. when she left the place for the day.

In this state of the record, appellant's contention that the trial court committed prejudicial error in sustaining objections to the questions asked of Jack Arnold on cross-examination must be sustained.

■ As stated in 27 California Jurisprudence, section 76, page 96: "The authorities all agree that wide latitude should be allowed in cross-examination for the purpose of testing accuracy or credibility, especially if the witness is a reluctant one, or is hostile, or if he is one of the parties in interest, or *is a witness against a defendant in a criminal prosecution.*"

Again in the same work at page 103, section 78: "A witness may be cross-examined for the purpose of testing his accuracy, veracity or credibility, and great liberality is shown in the allowance of questions directed to that end. Thus it is proper to ask questions which are designed to test the knowledge, recollection, interest, mental condition and character of the witness, and likewise to elicit answers which will contradict his testimony."

In *People* v. *Serpa*, 67 Cal.App.2d 327, 332 [154 P.2d 6], the court stated: ". . . that while wide latitude should be allowed in cross-examination for the purpose of testing accuracy or credibility, especially if the witness is a reluctant one, or is a witness against a defendant in a criminal case, nevertheless the trial court has discretionary power over cross-examination which will not be disturbed on appeal unless it appears that there has been an abuse of such discretion; that thus the trial court may confine an examination within reasonable limits, or may curtail a cross-examination which is unduly protracted, frivolous, or which relates to matters which are irrelevant, or have already been covered. . . ."

Again, in *People* v. *Williams*, 43 Cal.App. 60, 65 [184 P. 498], appears a statement by the court which is particularly applicable to the facts presented by the instant prosecution: "The utmost latitude compatible with our rules of evidence should have been permitted in the cross-examination of that witness. The record shows other instances where the cross-examination was held within boundaries more restricted than is usual under circumstances where the guilt of the defendant depends to a considerable extent, not only upon indirect evidence, but also upon the credibility of a single witness."

■ It is obvious that in sustaining the objections of the prosecution to the questions asked of Mr. Arnold upon cross-examination, appellant's substantial rights were prejudiced, for the reason that had such evidence gone to the jury, they

could and might have drawn therefrom an inference that Mr. Arnold was in a crap game at the time testified to by appellant. Such evidence went directly to the credibility of Mr. Arnold's denial that he was present at such crap game, and therefore it should have been allowed. Restricting the cross-examination to the extent it was done in this cause, amounted to an abuse of discretion on the part of the trial court.

In view of the conclusion here reached, it is not deemed necessary to pass upon other points made by appellant in this appeal.

For the reasons stated, the order denying appellant's motion for a new trial is reversed. The appeals from the verdict and from the judgment are dismissed, and it is directed that the order fixing the terms of appellant's probation be modified by reducing the fine to $200.

Doran, J., and White, J., concurred.